IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KENNETH SEMIEN, JONATHAN FRANKS, SEAN PEVSNER; | § § § | |
| NATIONAL FEDERATION OF THE BLIND OF TEXAS; and | § § § | |
| THE COALITION OF TEXANS WITH DISABILITIES, | § § § | |
| Plaintiffs, | § § | Civil Action No. 1:20-cv-789 |
| vs. | § § | |
| RUTH HUGHS, Texas Secretary of State, in her official capacity, | § § § | |
| Defendant. | § § | |

## COMPLAINT

## INTRODUCTION

1.     Kenneth Semien, Jonathan Franks, Sean Pevsner, the National Federation of the

Blind of Texas ("NFB-TX"), and the Coalition of Texans with Disabilities ("CTD") (collectively

"Plaintiffs") bring this action against Defendant Ruth R. Hughs, in her official capacity as Texas

Secretary of State, under Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29

U.S.C. § 794, *et seq*. Plaintiffs seek to vindicate the right of individuals who, by reason of their

disabilities, cannot read and fill out a paper ballot to vote privately and independently by mail-in

ballot in the November 2020 election and in future elections. Because vote-by-mail ballots in

Texas are transmitted, marked, and returned entirely on paper, this process is inaccessible to blind

or low-vision voters and other voters with disabilities that prevent them from marking a paper

ballot. As such, Defendant, by preventing county election officials from providing an accessible vote-by-mail ballot process, is denying Plaintiffs their right to cast a private ballot in violation of federal laws. On the basis of these violations, Plaintiffs seek preliminary and permanent injunctive relief, a declaratory judgment, attorneys' fees and costs, and any other available relief.

2.   Voters are eligible to vote early by mail ("vote-by-mail") in Texas if they: (a) will be away from their county on Election Day and during early voting; (b) are disabled; (c) are 65 years of age or older on Election Day; or (d) are confined in jail, but eligible to vote.

3.   The ballot used for vote-by-mail voting is a paper ballot.

4.   Thus, voting by mail is inaccessible for blind[1] voters or other voters with disabilities who cannot complete a paper mail-in ballot by reason of disability.[2]

5.   The inaccessible vote-by-mail ballot system in Texas is part of a long history of discriminatory barriers—from inaccessible transportation, to inaccessible polling places, to inaccessible voting machines—that people with disabilities have had to endure.

6.   As a consequence, the voter turnout of persons with disabilities has been lower than turnout among voters without disabilities.[3] However, this does not reflect a lack of interest in voting. Voter turnout has increased substantially across the country in recent years, as states reduce barriers to voting for the disabled.

---

[1] For semantic convenience throughout this Complaint, the term "blind" is used in its broadest sense to include all persons who, under federal civil rights laws, have a vision-related disability that requires alternative methods to access print.

[2] For semantic convenience throughout this Complaint, we refer to these disabilities as "print disabilities."

[3] L. Schur & D. Kruse, *Fact Sheet: Disability and Voter Turnout in the 2018 Elections*, Rutgers School of Management & Labor Relations 5 (May 18, 2020), https://smlr.rutgers.edu/sites/default/files/2018disabilityturnout.pdf.

7.    But Texas's reliance on exclusively paper vote-by-mail ballots keeps blind Texans and other Texans with print disabilities who require accessible ballots from participating in mail-in voting.

8.    Counties already offer electronic ballots delivered by email for members of the military and overseas voters in federal elections pursuant to the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"). *See* https://www.votetexas.gov/voting/index.html#military-and-overseas-voters, at B. Because counties already have an electronic ballot under UOCAVA, counties also have a means to offer an accessible electronic ballot to Texans who need an accessible mail-in ballot by reason of disability.

9.    However, Defendant refuses to allow county election officials to provide accessible electronic ballots to individuals with vision and print disabilities. This refusal places Plaintiffs in an impossible bind. Plaintiffs must either: (a) forfeit their right to vote privately and independently—and in some instances, forfeit their right to vote at all, or (b) risk their health during this pandemic by traveling to a polling place in order to cast their vote in person.

10.    Because other vote-by-mail eligible voters may cast their votes by mail-in ballot privately and independently, the ADA and Section 504 require Defendant to cease blocking county election officials from providing voters who are blind or have print disabilities—including Plaintiffs—an equal opportunity to do the same.

11.    Texas must implement a solution that makes available an accessible electronic vote-by-mail program so that blind and print disabled vote-by-mail eligible voters have equal access to vote independently and privately in all elections.

12.    Defendant has ample time to allow counties to make mail-in ballots accessible in time for the November 3, 2020 election. Plaintiffs demand such an action.

13.     Accessible vote-by-mail systems are readily available. Other states use such systems on a regular basis.

14.     For example, when Michigan faced a similar inaccessible ballot problem in May 2020, it agreed to purchase a remote accessible vote-by-mail system for future elections.

15.     The same type of relief can be replicated in Texas so that the blind and other people with print disabilities are able to cast an accessible mail-in ballot like other voters.[4]

16.     By preventing county election officials from making vote-by-mail ballots accessible, Defendant has treated Plaintiffs like second-class citizens; ignored their basic rights to privacy, equality, and dignity; and unlawfully undermined their fundamental right to vote.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, because Plaintiffs' claims arise under the ADA and Section 504. In addition, the Court has jurisdiction over Plaintiffs' claims for declaratory relief pursuant to 28 U.S.C. §§ 2201–02.

18.     Venue is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in this district.

## PARTIES

19.     Plaintiff Kenneth Semien is a blind individual who is registered to vote in Texas. Mr. Semien is the current Board President of the Coalition of Texans with Disabilities and the past president of the American Council of the Blind of Texas. He resides in Beaumont, Texas and is a

---

[4] Plaintiffs also seek declaratory relief stating that Defendant's conduct violates the ADA and Section 504.

regular voter who would like to vote in the November 3, 2020 election. Mr. Semien is eligible to vote-by-mail in Texas.

20.     Plaintiff Jonathan Franks is a blind individual who is registered to vote in Texas. Mr. Franks recently received his Master of Social Work degree from Texas State University and currently serves as Chairman of the Board of the Mayor's Committee for People with Disabilities in Austin. He resides in Austin, Texas. He is a member of NFB-TX and is a regular voter who would like to vote in the November 3, 2020 election. Mr. Franks is eligible to vote-by-mail in Texas.

21.     Plaintiff Sean Pevsner is an individual with severe cerebral palsy who is registered to vote in Texas. Mr. Pevsner is a practicing attorney in North Texas. He resides in Arlington, Texas and is a regular voter who would like to vote in the November 3, 2020 election. Mr. Pevsner is eligible to vote-by-mail in Texas.

22.     Plaintiff National Federation of the Blind of Texas ("NFB-TX") is the Texas affiliate of the National Federation of the Blind. NFB-TX is a 501(c)(3) non-profit membership organization comprised of blind Texans and their families and friends. The organization promotes the general welfare of the blind by assisting the blind in their efforts to integrate themselves into society on terms of equality and by removing barriers that result in the denial of opportunity to blind persons in virtually every sphere of life, including education, employment, family and community life, transportation, and recreation. NFB-TX's goal of complete integration of the blind into society on a basis of equality includes removal of legal, economic, and social discrimination. NFB-TX advances its members' right to participate fully and equally in all aspects of their lives, including by ensuring its blind members can vote on equal footing with every other Texan. Among other efforts, NFB-TX has worked to ensure the blind have an equal opportunity to vote on the

same terms as other voters by collaborating with developers of voting technology to ensure accessibility for the blind.

23.     Plaintiff the Coalition of Texans with Disabilities is a 501(c)(3) non-profit membership organization comprised of Texans with disabilities and their families and friends. It is the oldest and largest member-driven cross-disability organization in Texas. CTD envisions a future where all Texans with all disabilities may work, live, learn, play, and participate fully in the community. CTD advances its members' right to participate fully and equally in all aspects of their lives, including by ensuring its members can vote on equal footing with every other Texan. Among other efforts, CTD has worked to ensure people with disabilities have an equal opportunity to vote on the same terms as other voters by collaborating with other disability rights groups in Texas and addressing the issue with state legislators.

24.     Plaintiff NFB-TX has many blind members, including Jonathan Franks, who are registered to vote in Texas, are eligible to vote by mail, and wish to vote in upcoming elections, including the November 2020 election, by casting a mail-in ballot privately and independently. Some of NFB-TX's members are also at high risk of serious health consequences if they contract COVID-19. NFB-TX brings this lawsuit on behalf of itself and on behalf of its members.

25.     Plaintiff CTD represents many individuals with disabilities who have visual impairments, including Kenneth Semien, who are registered to vote in Texas, are eligible to vote by mail, and wish to vote in upcoming elections, including the November 2020 election, by casting a mail-in ballot privately and independently. Plaintiff CTD also has many members who have other disabilities that prevent the individual from being able to fill out a paper mail-in ballot independently. Some of CTD's members are also at high risk of serious health consequences if they contract COVID-19. CTD brings this lawsuit on behalf of itself and on behalf of its members.

26.     Defendant Hughs is the Texas Secretary of State, and the Chief Election Officer for Texas. Defendant Hughs is sued in her official capacity only and may be served with process at 1019 Brazos, Room 105, Austin, Travis County, Texas 78701.

## FACTUAL ALLEGATIONS

**COVID-19's Effect on Texas's November 2020 Election**

27.     Texas is currently one of several states seeing a dramatic increase in COVID-19 cases and hospitalizations.

28.     Nationwide, as of July 23, 2020, there have been 3,998,259 total cases of COVID-19, and 143,701 deaths.[5] In Texas, as of July 5, 2020, there have been 363,615 total cases of COVID-19 and 4,439 deaths.[6]

29.     In people of any age, the CDC has listed certain medical conditions that increase the risk of serious health consequences of contracting COVID-19.[7]

30.     Adults with disabilities are three times more likely than adults without disabilities to have serious underlying medical conditions that place them at higher risk of severe illness from COVID-19.[8]

---

[5] Centers for Disease Control and Prevention (CDC), Coronavirus Disease 2019 (COVID- 19), Cases in the U.S., https://www.cdc.gov/coronavirus/2019-ncov/cases- updates/cases-in-us.html.

[6] Texas Department of State Health Services, COVID-19 Data for Texas, https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83

[7] *See* CDC, People of Any Age

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited July 10, 2020.)

[8] *See* CDC, Coronavirus Disease 2019 (COVID-19): People with Disabilities, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-disabilities.html (last visited July 13, 2020).

31.     Because voting in person necessitates being around many other people at polling places, polling places are ideal environments to further the spread of the COVID-19 virus.

32.     The dangers posed by in-person voting are real. The Wisconsin Department of Health Services directly traced 71 confirmed cases of COVID-19 to in-person voting that occurred on April 7, 2020. A recent study found that the real number is closer to 700 cases related to in-person voting. This accounted for almost 8% of Wisconsin's COVID cases five weeks following the election.[9]

33.     Technology is readily available that would afford Plaintiffs, and other voters with print disabilities, the opportunity to cast their votes through mail-in ballots privately and independently—as individuals without disabilities who vote by mail may do. But Defendant has prevented county election officials to make this technology available to Plaintiffs.

34.     With respect to the November 2020 election in Texas, the need for individuals with disabilities to be able to vote by mail is now heightened due to the recent significant increase in COVID-19 cases. Indeed, on June 23, Texas Governor Abbott said in an interview that "because the spread is so rampant right now, there's never a reason for you to have to leave your home," and "[u]nless you do need to go out, the safest place for you is at your home."[10]

35.     If forced to vote in person, it will be more difficult for blind individuals and others with disabilities, including Plaintiffs, to ensure they remain six feet apart from other individuals, as is recommended by the CDC in order to stem the spread of COVID-19—especially if such individuals need assistance to cast their ballot.

---

[9] Chad D. Cotti, et al., *The Relationship Between In-Person Voting and COVID-19: Evidence from the Wisconsin Primary*, National Bureau of Economic Research Working Paper Series, Working Paper 27187 (May 2020) https://www.nber.org/papers/w27187.pdf.

[10] https://www.texastribune.org/2020/06/23/texas-coronavirus-greg-abbott-home/.

36.     The journey to a polling place also is more hazardous for blind individuals and individuals who do not drive because of a disability, including Plaintiffs, than it is for nondisabled individuals. Individuals with disabilities who cannot drive disproportionately rely on public transportation services, which necessarily brings them into close proximity with others, thereby increasing the risk of contracting COVID-19.

**Plaintiff Kenneth Semien**

37.     Kenneth Semien lives alone in Beaumont, Texas.

38.     Mr. Semien is totally blind in his left eye and can only see shapes with his right eye. He cannot read print.

39.     Mr. Semien is a registered voter who has regularly voted in past elections held in Texas. For those past elections, he always went to his local polling place to cast his vote in person.

40.     Because of the COVID-19 pandemic, for the first time ever, Mr. Semien does not feel safe going to his local polling place to vote, and he does not intend to go to his polling place on November 3, 2020 for the election.

41.     Mr. Semien is concerned about contracting COVID-19 while voting. He has hypertension and he falls within the CDC's list of individuals at an increased risk of severe illness.

42.     Mr. Semien is uncertain as to whether other individuals at the polling place will wear face coverings in order to help prevent the spread of the COVID-19 virus. Governor Abbott's order requiring the use of face coverings specifically excludes people who are voting or assisting voters from the order.[11] Because Mr. Semien is blind, if he were to go to a polling place, he could

---

[11] See Executive Order No. GA-29 relating to the use of face coverings during the COVID-19 disaster available at https://open.texas.gov/uploads/files/organization/opentexas/EO-GA-29-use-of-face-coverings-during-COVID-19-IMAGE-07-02-2020.pdf

not determine on his own whether the people surrounding him were maintaining adequate "social distancing."

43.     In light of these risks to his health, Mr. Semien decided not to vote in the July 14, 2020 run-off election. He wanted to vote in the July 14, 2020 election, but he did not because he would have needed assistance with filling out the mail-in paper ballot. Mr. Semien did not want anyone to come into his home to provide that assistance for fear of contracting COVID-19. He has not left his home since March 14, 2020.

44.     Voting independently and privately is important to Mr. Semien. If available, he intends to apply for an accessible mail-in ballot so that he can exercise his right to vote in the upcoming November 3, 2020 election.

45.     Mr. Semien is unable to vote independently and privately using a mail-in ballot because Defendant is preventing county election officials from making the process accessible to voters who cannot use the paper mail-in ballot and require an accessible electronic option.

**Plaintiff Jonathan Franks**

46.     Plaintiff Jonathan Franks is totally blind and cannot read print.

47.     Mr. Franks lives in Austin, Texas with his wife, who is also blind.

48.     Mr. Franks is a registered voter who has regularly voted in past elections held in Texas.  For those past elections, he always went to his local polling place to cast his vote in-person.

49.     Because of the COVID-19 pandemic, for the first time ever, Mr. Franks does not feel safe going to his local polling place in order to vote, and he does not intend to go to his polling place on November 3, 2020 for the election.

50.     Mr. Franks is concerned about contracting COVID-19 while voting. He has Type 1 diabetes and he falls within the CDC's list of individuals who are at an increased risk of severe illness from COVID-19.

51.     Mr. Franks is uncertain whether other individuals at the polling place will wear face coverings in order to help prevent the spread of the COVID-19 virus. Governor Abbot's order requiring the use of face coverings specifically excludes people who are voting or assisting voters from the order. Because Mr. Franks is blind, if he were to go to a polling place, he could not determine on his own whether the people surrounding him were maintaining adequate "social distancing." He would also require a ride to the polling place.

52.     In light of these risks to his health, Mr. Franks decided to vote by mail in the July 14, 2020 run-off election. He could not fill out the paper ballot independently or privately and was forced to rely on an acquaintance to assist him with his ballot.

53.     Voting independently and privately is important to Mr. Franks. If available, he intends to apply for an accessible mail-in ballot so that he can exercise his right to vote in the upcoming November 3, 2020 election.

54.     Mr. Franks is unable to vote independently and privately using a mail-in ballot because Defendant is preventing county election officials from making the process accessible to voters who cannot use the paper mail-in ballot and require an accessible electronic option.

**Plaintiff Sean Pevsner**

55.     Sean Pevsner lives in Arlington, Texas.

56.     Mr. Pevsner is a registered voter who has regularly voted in past elections held in Texas. For those past elections, he always went to his local polling place to cast his vote in-person.

57.     Mr. Pevsner has severe cerebral palsy and uses a power wheelchair. Due to his cerebral palsy, he has very limited control over his movements, including his hands and fingers. He is unable to use his hands to mark a ballot independently because he lacks the dexterity and control over movements to be able to fill out a paper ballot. He uses an eye tracking technology to access email and other online programs.

58.     Because of the COVID-19 pandemic, for the first time ever, Mr. Pevsner does not feel safe going to his local polling place to vote, and he does not intend to go to his polling place on November 3, 2020 for the election.

59.     He has a compromised respiratory system secondary to cerebral palsy and is at an increased risk of severe illness from COVID-19. In 2015, he contracted an infection and had severe sepsis.  He spent two weeks on a ventilator and in the Intensive Care Unit. He is very concerned that if he contracts COVID-19, he may need to go back into the ICU with a ventilator.

60.     He is uncertain whether other individuals at his polling place will wear face coverings in order to help prevent the spread of the COVID-19 virus. Governor Abbott's order requiring the use of face coverings specifically excludes people who are voting or assisting voters from the order.

61.     In light of these risks to his health, Mr. Pevsner decided to vote by mail in the July 14, 2020 run-off election. He was unable to fill out the paper ballot independently or privately and was forced to rely on someone to assist him with his ballot. Voting independently and privately is important to Mr. Pevsner. If available, he intends to apply for an accessible mail-in ballot so that he can exercise his right to vote in the upcoming November 3, 2020 election.

62.     Mr. Pevsner is unable to vote independently and privately using a mail-in ballot because Defendant is preventing county election officials from making the process accessible to voters who cannot use the paper mail-in ballot and require an accessible electronic option.

**The Mail-in Ballot Process in Texas**

63.     In Texas, a voter must meet one of the following criteria to be eligible to vote by mail:

- Be 65 years or older;

- Be disabled;

- Be out of the county on Election Day and during the period of early voting by personal appearance; or

- Be confined in jail, but otherwise eligible.

64.     If the voter meets one of these conditions, he or she can apply for a ballot by mail.

65.     To apply for a mail-in ballot, the voter must either print a completed Application for Ballot By Mail ("ABBM") from the Secretary of State's website, print a blank ABBM and fill it out by hand, or submit a request online for a blank paper ABBM be mailed to the voter.

66.     A voter is required to submit a paper copy of the ABBM. If someone helps the voter fill it out, sign it, or mail it, that person must complete Section 11, which requires information about and a signature from that person.

67.     Finally, the voter must address and mail the completed ABBM to the Early Voting Clerk in the voter's county. The voter may also fax the application if a fax machine is available in the Early Voting Clerk's office. The voter also has the option of submitting a scanned copy of the completed and signed application to the Early Voting Clerk via email. If, however, an ABBM

is faxed or emailed, then the original, hard copy of the application must **also** be mailed and received by the Early Voting Clerk no later than the 4th business day after it is faxed or emailed.

68.     For voters who are blind or have a print disability, there is simply no option for submitting an ABBM independently since it must be printed, signed, and addressed and mailed to the Early Voting Clerk's Office.

69.     The process of voting by mail is also inaccessible to blind individuals and other individuals with print disabilities. Mail-in ballots are only provided in paper form.

70.     Once a voter receives the mail-in ballot in the mail, the voter must complete the following steps:

> A. Locate the large, outer envelope sent to the voter's address, which contains the ballot, "secrecy" envelope, and "return" envelope;
> B. Open the outer envelope and locate the ballot inside;
> C. Read the ballot and fill it out by hand;
> D. Place the completed ballot inside the "secrecy" envelope;
> E. Seal the "secrecy" envelope and place it inside the "return" envelope;
> F. Sign a declaration on the outside of the "return" envelope affirming that the voter is qualified to use the ballot; and
> G. Place the return envelope in the mail.

71.     Defendant recognizes that its mail-in voting program is inaccessible to individuals with print disabilities. According to the Secretary of State's Office, once a voter has received the mail-in paper ballot, the voter is provided with the following instructions:

> • If you need help reading, marking, or mailing the actual ballot, ask a trusted relative or friend for help. It's not uncommon for someone from a political organization to offer to help with your ballot soon after you've received it. We recommend you decline this kind of help for several reasons. If you allow your ballot to be mailed by someone you don't know, it might not be mailed at all. If it's delivered to the elections office by a common or contract carrier from the address of a candidate or a campaign's headquarters, your ballot will be rejected.

> • Finally, if someone helps you with your mail ballot, you must put your helper's name and address on the carrier envelope, which is the one used to return your

ballot to the early voting clerk. Your helper must also sign the carrier envelope.[12]

72.    For voters who are blind or have a print disability, there is simply no option for receiving, filling out, or submitting a ballot by mail.[13]

**Texas' Mail-In Ballot Process Is Inaccessible**

73.    Given the above-described process for submitting an ABBM and for filling out mail-in ballots, a sighted individual who does not have a disability that prevents him from filling out a ballot, and who qualifies for vote-by-mail voting, may vote independently and privately without having to travel to a polling place on Election Day during the COVID-19 pandemic.

74.    By contrast, blind individuals and individuals with print disabilities cannot vote independently and privately by mail-in ballot. The process of requesting, marking, and casting a vote through a mail-in ballot is completely inaccessible.

75.    Blind individuals, including Plaintiffs Semien and Franks, and members of NFB-TX, cannot read the printed text that appears on the mail-in ballot, and cannot complete the multi-step process described above without assistance.

76.    Individuals who cannot use their hands or arms and who are unable to fill out a paper ballot by reason of disability, including Plaintiff Mr. Pevsner and members of the Coalition of Texans with Disabilities, cannot fill out or complete the multi-step process described above without assistance.

77.    Because Plaintiffs and other Texas voters with print disabilities must rely on the assistance of another, they cannot vote privately and independently using mail-in ballots.

---

[12] https://www.votetexas.gov/voting/when.html#helpful-hints-on-voting-early-by-mail

[13] Upon information and belief, Bexar County has an option for an electronic submittal of a paper vote-by-mail ballot.

78.     By forcing Plaintiffs and other voters with disabilities to seek out third-party assistance, the vote-by-mail process jeopardizes the safety of Plaintiffs and other voters with disabilities during the COVID-19 pandemic.

79.     Although Plaintiffs could choose to vote in person on November 3, 2020, doing so will put their health (or even their lives) at risk. Plaintiffs are entitled to equal access to a mail-in ballot to vote privately and independently, as individuals without disabilities.

80.     If permitted by Defendant, Texas counties are perfectly able to make their vote-by-mail ballots accessible by implementing an accessible online ballot marking system, such as that developed by the State of Maryland and made available to other jurisdictions without cost, or by other open source alternatives such as Prime III or Voting Works or those provided by third party vendors such as Democracy Live, Five Cedars, or Dominion Voting, and used by jurisdictions across the country.

81.     The Secretary of State must not prohibit counties from making their vote-by-mail systems accessible to voters with disabilities.

**Electronic Ballots Already Exist under UOCAVA**

82.     A separate absentee[14] voting system applies for Texans who are active members of the military or who live overseas under UOCAVA.

83.     Military and overseas voters may receive and mark their absentee ballots electronically.

84.     Under Texas' system, once the overseas military member marks his or her ballot, that voter must mail or fax a copy of the absentee ballot back to local election officials in Texas.

---

[14] Under UOCAVA, the vote-by-mail process is referred to as "absentee" voting.

*Complaint*                                                                                    Page 16

85.     Defendant has refused to allow counties to make the existing UOCAVA electronic ballot system accessible and offer it to voters with disabilities who require an accessible electronic ballot.

**Plaintiffs Gave Defendant Notice of the Ballot Inaccessibility Problems**

86.     Defendant has been informed—on many occasions—that the failure to allow county officials to make their mail-in voting systems accessible to blind individuals violates the ADA and Section 504.

87.     On September 29, 2019, the National Federation of the Blind sent a letter to then Secretary of State Steve Simon about mail-in voting for blind and low-vision voters. This letter explained that both the ADA and Section 504 require states to offer voters with disabilities an opportunity to vote by absentee ballot that is equal to the opportunity offered to voters without disabilities.[15]

88.     The letter further explained that the U.S. Constitution's Supremacy Clause requires state law to defer to federal law to ensure their absentee and mail-in ballot processes are non-discriminatory and comply with federal law.[16] Accordingly, Defendant cannot idly stand by—or wait until its legislature acts—when it could immediately allow county election officials to modify the vote-by-mail ballot process to prevent discrimination against voters with disabilities in the upcoming elections.

89.     On June 17, 2020, disability groups, including the American Council of the Blind of Texas, represented by Plaintiff Kenneth Semien, met with Defendant about allowing local

---

[15] *See* Ex. 1 at 1 (citing *Nat'l. Fed'n. of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016)).

[16] *See* Ex. 1 at 2 (citing *Lamone*, 813 F.3d at 508; *Hindel v. Husted*, 875 F.3d 344, 349 (6th Cir. 2017)).

election officials to make the mail-in voting process accessible to blind voters and others with pint disabilities. At this meeting, Defendant stated that she would not permit counties to make their mail-in ballots accessible.

90.     In a letter to Defendant on July 2, 2020, Plaintiffs reiterated that the "Secretary of State must not prohibit counties from making their vote-by-mail systems accessible to voters with disabilities," and that "federal law neither requires nor permits Texas to await legislative action before making the required modifications to ensure equal access to voting for people with disabilities." Plaintiffs requested a response to the letter by July 6, 2020.

91.     On July 14, 2020, Defendant's counsel provided a response indicating that Defendant did not believe federal law required her to ensure blind voters and voters with print disabilities could access mail-in ballots, that she did not think it was allowed under Texas law, and that she did not think it was feasible to implement in counties across Texas.

92.     According to public records, Texas has a very significant pool of federal funds earmarked for making elections accessible and secure, which could and should be used to resolve this issue. In 2020, Texas will receive $26,064,574 in funding through the Help American Vote Act ("HAVA"). In addition, Texas received $24,546,840 million pursuant to the CARES Act in 2020.

93.     Despite the efforts of disability groups and Plaintiffs, Defendant continues to refuse to allow county election officials to make the November 3, 2020 election accessible to individuals with print disabilities, including Plaintiffs, who wish to exercise their right to vote but do not wish to risk their health in order to do so.

## COUNT I

### Violation of Title II of the Americans with Disabilities Act 42 U.S.C. § 12131–12134

94.     Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

95.     Title II of the ADA guarantees qualified individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

96.     Title II mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.*

97.     In providing aids, benefits, or services, public entities may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others," nor may public entities provide qualified individuals with disabilities "an aid, benefit, or service that is not as effective in affording equal opportunity" to gain the same result or benefit as provided to others. 28 C.F.R. § 35.130(b)(1)(ii)-(iii).

98.     Public entities must make reasonable modifications to their policies, practices, and procedures when necessary to avoid discrimination against individuals with disabilities. *Id.* § 35.130(b)(7)(i).

99.     Furthermore, public entities "shall take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others," and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities, including applicants, participants, companions, and members of the public, an equal opportunity to

participate in, and enjoy the benefits of, a service, program, or activity of a public entity." *Id.* § 35.160.

100.    To be effective, "auxiliary aids and services must be provided in . . . such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2).

101.    Auxiliary aids and services include "screen reader software; magnification software; optical readers; . . . accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." *Id.* § 35.104.

102.    Because they are blind, Mr. Semien, Mr. Franks, and other NFB-TX members are substantially limited in seeing, and are individuals with disabilities protected by the ADA. *See* 42 U.S.C. § 12102; 28 C.F.R. § 35.108.

103.    Because they are substantially limited in at least one major life activity—including in Mr. Pevsner's case standing, walking, performing manual tasks, and other things—Mr. Pevsner and other CTD members are individuals with disabilities protected by the ADA. *Id.*

104.    Plaintiffs, other NFB-TX members, and other CTD members are qualified because they are registered to vote in Texas, are eligible for vote-by-mail voting, and intend to vote in the November 2020 election. Plaintiffs, other NFB-TX members, and other CTD members are qualified to receive voting services from Defendant and are entitled to the protections afforded under the ADA. *See* 42 U.S.C. § 12131(2).

105.    Defendant Hughs is the Secretary of State and is the Chief Elections Officer in Texas. The Office of the Secretary of State is a public entity subject to Title II of the ADA. *See* 42 U.S.C. § 12131(1).

106.    Voting by mail is a service, program, or activity provided by Defendant.

107.    Defendant's mail-in voting process discriminates against Plaintiffs and other voters with disabilities because these individuals cannot vote secretly and independently, but other voters without disabilities can.

108.    Defendant has failed to provide Plaintiffs and other voters with disabilities with an opportunity to vote by mail-in ballot that is equal to the opportunity provided to other voters that do not have disabilities.

109.    Defendant could make reasonable modifications to their vote-by-mail ballot voting process by allowing and assisting counties to offer accessible online voting to Plaintiffs and other voters with disabilities.

110.    Defendant has failed to afford Plaintiffs and other voters with disabilities the opportunity to use auxiliary aids and services necessary to afford them effective communication in the mail-in voting process, and by refusing to allow counties to provide accessible mail-in ballots.

111.    Defendant has excluded and continues to exclude Plaintiffs and other voters with print disabilities from participation in, and denied them the benefits of, or otherwise discriminated against them in, its service, program, or activity of voting by mail-in ballot.

112.    As a result of Defendant's actions and inactions, Plaintiffs and their members have suffered and will continue to suffer irreparable harm. They have suffered and continue to suffer from discrimination and unequal access to Defendant's mail-in voting program. And in the absence of injunctive relief, Plaintiffs and those similarly situated will be denied their right to vote by absentee or mail-in ballot privately and independently.

113.    In light of COVID-19, Plaintiffs and other voters with disabilities are at imminent risk of irreparable harm absent injunctive relief for the November 3, 2020 election that would

provide an accessible, online voting option. Many individuals do not have assistance in their homes to complete paper mail-in ballots. For that reason, Defendant's actions and inactions have already prevented Mr. Semien and other similarly situated individuals from voting in the July 14, 2020 run off.

114.    Because of Defendant's intransigence, Plaintiffs and other individuals with disabilities will face the unconscionable choice of either leaving their homes in order to vote independently at their polling place— thereby facing the threat of severe illness or death—or staying home and foregoing the right to vote privately and independently (if third-party assistance is available), or the right to vote entirely (if it is not).

115.    Defendant's failure to meet her obligations to allow counties to provide voters with disabilities with an equal opportunity to vote by mail-in ballot are ongoing violations of the ADA and its implementing regulations. Unless restrained from doing so, Defendant will continue to violate the ADA and to inflict irreparable injuries for which Plaintiffs have no adequate remedy at law.

116.    The ADA authorizes injunctive relief and Plaintiffs are entitled to injunctive relief, including the requested preliminary injunction, as well as reasonable attorney's fees and costs.

## COUNT II

**Violation of Section 504 of the Rehabilitation Act of 1973 29 U.S.C. § 794, *et seq.***

117.    Plaintiffs incorporate the allegations in the preceding paragraphs, as if alleged herein.

118.    Plaintiffs, NFB-TX members, and CTD members are individuals with disabilities who are registered and eligible to vote by mail and, thus, are protected by Section 504.

119.    The Office of the Secretary of State receives federal financial assistance and thus is subject to Section 504. 29 U.S.C. § 794.

120.    Section 504 mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *Id.* § 794(a).

121.    Section 504 defines "program or activity" to include "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government" or "the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government[.]" *Id.* § 794(b)(1).

122.    Such federally-funded entities may not, in providing aids, benefits, or services, "[d]eny a qualified handicapped person the opportunity accorded others to participate in the program or activity receiving Federal financial assistance." 28 C.F.R. § 42.503(b)(1)(i).

123.    Such federally-funded entities must also "insure that communications with their . . . beneficiaries are effectively conveyed to those having impaired vision and hearing," *id.* § 42.503(e), and, if the entity has 15 or more employees, must "provide appropriate auxiliary aids to qualified handicapped persons with impaired sensory, manual, or speaking skills where a refusal to make such provision would discriminatorily impair or exclude the participation of such persons in a program or activity receiving Federal financial assistance," *Id.* § 42.503(f).

124.    Defendant Office of the Secretary of State is an agency or instrumentality of the State of Texas, receives federal financial assistance, and thereby is subject to the requirements of Section 504.

125.     Vote-by-mail voting is a service, program, or activity provided by Defendant.

126.     Plaintiffs are people with disabilities under Section 504.

127.     Plaintiffs are registered to vote in Texas and are eligible to vote by mail and are thus qualified individuals with disabilities entitled to the protections of Section 504.

128.     Defendant has failed and continues to fail to meet her obligations to provide voters with disabilities an opportunity to vote that is equal to the opportunity provided to other voters.

129.     In denying use of an accessible vote-by-mail ballot system, Defendant refuses to provide an auxiliary aid or service that would allow Plaintiffs equal access to vote.

130.     Accordingly, Defendant has discriminated and continues to discriminate against Plaintiffs in mail-in voting.

131.     As a result of Defendant's actions, Plaintiffs have suffered and will continue to suffer irreparable harm; they have suffered and continue to suffer from discrimination and unequal access to Defendant's program, service, or activity of voting by mail-in ballot.

132.     Accessible mail-in ballot systems are readily available, and such systems would allow independent, private mail-in voting for people who are unable to fill out a paper mail-in ballot by reason of disability.

133.     In the absence of injunctive relief, including a preliminary injunction, Defendant will continue to deny Plaintiffs their right to vote privately and independently by mail-in or absentee ballot in the November 2020 election and in future elections.

134.     Unless the requested relief is granted, Plaintiffs will suffer irreparable harm in that they will be discriminated against and denied equal access to the fundamental right to vote.

135.     Plaintiffs are entitled to injunctive relief, including a preliminary injunction, as well as reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that this Court enter judgment in their favor and award them the following relief:

136.     A preliminary and permanent injunction prohibiting Defendant from violating the ADA and Section 504, requiring Defendant to remedy its mail-in ballot request system by implementing and allowing counties to implement a remote accessible vote-by-mail system for Plaintiffs and those similarly situated for all future elections;

137.     A declaration that Defendant has and continues to violate the ADA and Section 504;

138.     An award of Plaintiffs' reasonable attorney's fees, litigation expenses, and costs; and

139.     Such other and further relief as the Court may deem just and proper.


Respectfully submitted,


 /s/ Lia S. Davis
LIA S. DAVIS
Texas State Bar No. 24071411
PETER HOFER
Texas State Bar No. 09777275
BRIAN EAST
Texas State Bar No. 06360800
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
Email: ldavis@drtx.org
Email: phofer@drtx.org
Email: beast@drtx.org

EVE L. HILL*
  _/s/ Eve L. Hill_____
Maryland State Bar No. 19938
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com

*Counsel for Plaintiffs*


*Motion to Participate *Pro Hac Vice* will be filed after case opening.