IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| KENNETH SEMIEN, JONATHAN FRANKS, SEAN PEVSNER; | § § § | |
| NATIONAL FEDERATION OF THE BLIND OF TEXAS; and | § § § | |
| THE COALITION OF TEXANS WITH DISABILITIES, | § § § | |
| Plaintiffs, | § § | Civil Action No. 1:20-cv-00789-LY |
| vs. | § § | |
| RUTH HUGHS, Texas Secretary of State, in her official capacity, | § § § | |
| Defendant. | § § | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

LIA S. DAVIS
Texas State Bar No. 24071411
PETER HOFER
Texas State Bar No. 09777275
BRIAN EAST
Texas State Bar No. 06360800
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
Email: ldavis@drtx.org
Email: phofer@drtx.org
Email: beast@drtx.org

EVE HILL
*Admitted Pro Hac Vice*
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com

*Counsel for Plaintiffs*

## __TABLE OF CONTENTS__

INDEX OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 2

    I.   Ballot by Mail Voting In Texas ............................................................................ 2

    II.  Impact of COVID-19 ............................................................................................ 3

    III.  Accessible Voting Systems .................................................................................. 5

    IV.  The Individual Plaintiffs and Their Plans for Voting ........................................... 7

LEGAL STANDARD ................................................................................................................. 9

ARGUMENT ............................................................................................................................. 9

    I.   Plaintiffs are Likely to Succeed on the Merits. .................................................... 9

        A.  The plaintiffs are qualified voters with disabilities. ...................................... 10

        B.  Defendant's prohibition on accessible mail-in voting deprives Plaintiffs of their right to vote in a private, independent manner. ...................................... 11

        C.  The implementation of an accessible vote-by-mail system does not fundamentally alter the state's programs or services. ......................................... 13

    II.  Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief. ............... 14

    III.  The Balance of Equities Tips in Favor of the Plaintiffs. ................................. 15

    IV.  Preliminary Relief Advances Public Interest. ................................................. 16

    V.  Plaintiffs Should Not be Required to Post a Bond ........................................... 17

CONCLUSION ......................................................................................................................... 17

CERTIFICATE OF CONFERENCE ....................................................................................... 18

CERTIFICATE OF SERVICE ................................................................................................. 19

## <u>INDEX OF AUTHORITIES</u>

**Cases**

*American Council of the Blind v. Paulson,*
    525 F.3d 1256 (D.C. Cir. 2008) ..................................................................... 13

*Byrum v. Landreth,*
    566 F.3d 442 (5th Cir. 2009) ........................................................................... 9

*Cadena v. El Paso Cty.,*
    946 F.3d 717 (5th Cir. 2020) ......................................................................... 10

*California Council of the Blind v. County of Alameda,*
    985 F. Supp. 2d 1229 (N.D. Cal. 2013) ......................................................... 11

*Corrigan Dispatch Co. v. Casa Guzman, S.A.,*
    569 F.2d 300 (5th Cir. 1978) ......................................................................... 17

*Disabled in Action v. Bd. of Elections in City of New York,*
    752 F.3d 189 (2d Cir. 2014)........................................................................... 11

*EEOC v. Chrysler Corp.,*
    733 F.2d 1183 (6th Cir. 1984) ....................................................................... 14

*Gresham v. Windrush Partners, Ltd.,*
    730 F.2d 1417 (11th Cir. 1984) ..................................................................... 14

*Hainze v. Richards,*
    207 F.3d 795 (5th Cir. 2000) ......................................................................... 15

*Harman v. Forssenius,*
    380 U.S. 528 (1965)......................................................................................... 1

*Hindel v. Husted,*
    875 F.3d 344 (6th Cir. 2017) .................................................................... 3, 14

*Jones v. Governor of Fla.,*
    950 F.3d 795 (11th Cir. 2020) ....................................................................... 15

*Middleton-Keirn v. Stone,*
    655 F.2d 609 (5th Cir. 1981) ......................................................................... 14

*National Federation of the Blind v. Lamone*,
    813 F.3d 494 (4th Cir. 2016) ..................................................................... 3, 10, 12, 13, 15

*National Org. on Disability v. Tartaglione*,
    No. 01-cv-1923, 2001 WL 1231717 (E.D. Pa. Oct. 11, 2001) ......................................... 11

*Nken v. Holder*,
    556 U.S. 418 (2009).................................................................................................. 10, 16

*Obama for Am. v. Husted*,
    697 F.3d 423 (6th Cir. 2012) ........................................................................................ 17

*South Bay United Pentecostal Church v Newsom*,
    140 S. Ct. 1613 (2020)................................................................................................... 3

*Tex. Democratic Party v. Abbott*,
    961 F.3d 389 (5th Cir. 2020) ..................................................................................... 4, 16

*University. of Tex. v. Camenisch*,
    451 U.S. 390 (1981)...................................................................................................... 10

*Winter v. Nat'l. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................................... 15, 16

**Statutes**

28 U.S.C. § 35.130(b)(1)(ii) ................................................................................................ 12

28 U.S.C. § 35.130(b)(1)(iii) ............................................................................................... 12

29 U.S.C. § 35.130(b)(7)(i) ................................................................................................. 12

29 U.S.C. § 35.160.............................................................................................................. 12

29 U.S.C. § 705(20)(B) ....................................................................................................... 10

29 U.S.C. § 794, *et seq.*...................................................................................................... 1, 2

42 U.S.C. § 12131, *et seq.*.................................................................................................. 1, 2

42 U.S.C. § 12132................................................................................................................ 11

42 U.S.C. § 12131(2) .......................................................................................................... 10

42 U.S.C. § 12188(a)(2)....................................................................................................... 15

42 U.S.C. § 12102(1) ................................................................................................ 10

52 U.S.C. § 20301, *et seq.* ..................................................................................... 2, 5

Tex. Elec. Code Ch. 82 ............................................................................................. 10

**Regulations**

28 C.F.R. § 35.130(b)(1)(iii) ................................................................................... 11

28 C.F.R. § 35.130(b)(7)(i) ..................................................................................... 13

28 C.F.R. § 35.160(b)(2) .......................................................................................... 11

28 C.F.R. § 35.164 ................................................................................................... 13

**Rules**

Fed. R. Civ P. 65 ....................................................................................................... 1

**Other Authorities**

Executive Order No. GA-29, Greg Abbott (July 2, 2019) relating to the use of face coverings
        during the COVID-19 disaster available at
        https://open.texas.gov/uploads/files/organization/opentexas/EO-GA-29-use-of-face-
        coverings-during-COVID-19-IMAGE-07-02-2020.pdf ................................. 4

Chad D. Cotti et al., *The Relationship Between In-Person Voting and COVID-19: Evidence from
        the Wisconsin Primary*, National Bureau of Economic Research Working Paper Series,
        Working Paper 27187 (May 2020), https://www.nber.org/papers/w27187.pdf ................. 4

Pub. L. No.  111-84, Subtitle H, §§ 575-589, 123 Stat. 2190 (2009) ............................................. 5

Stephen Key, *This Voting Invention Would Help Jurisdictions Significantly Reduce Their Costs*,
        Forbes (Nov. 29, 2018) https://www.forbes.com/sites/stephenkey/2018/11/29/this-voting-
        invention-would-help-jurisdictions-significantly-reduce-their-costs/#703fc5cf4042 ........ 7

Christopher R. Knittel and Bora Ozaltun, *What Does and Does Not Correlate with COVID-19
        Death Rates*, National Bureau of Economic Research Working Paper Series. Working
        Paper 27391 (June 2020) https://www.nber.org/papers/w27391.pdf. .............................. 5

Juan E. Gilbert et al., *Prime III: Where Usable Security and Electronic Voting Meet*, Auburn
        University, Dep't of Comput. Sci. and Eng'g (2007)
        http://www.usablesecurity.org/papers/primeIII.pdf. ........................................................ 7

*Plaintiffs' Motion for Preliminary Injunction*                                                    iv

**Constitutional Provisions**

U.S. Const., amend XXIV ........................................................................................................ 17

Plaintiffs—Kenneth Semien, Jonathan Franks, Sean Pevsner, the National Federation of the Blind of Texas, and the Coalition of Texans with Disabilities (Plaintiffs)—by and through undersigned counsel, hereby move this Honorable Court for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 and Local Rule CV-65, in order to prevent irreparable injury to Plaintiffs and those similarly situated. Defendant Ruth Hughs, in her official capacity as Texas Secretary of State, has refused to allow Texas counties to make their electronic mail-in ballots accessible to blind voters and voters with print disabilities so that they can complete their ballots privately and independently. This refusal violates Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.* and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq*. In support of this motion, Plaintiffs rely on the Complaint and the attached exhibits.

## PRELIMINARY STATEMENT

Today's case involves the most essential tenet of democracy—the right to vote. "[T]he right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." *Harman v. Forssenius*, 380 U.S. 528, 537 (1965).

The vote-by-mail ballot system in Texas is inaccessible to blind voters and voters with print disabilities[1]—like Plaintiffs Semien, Franks, and Pevsner, and members of Plaintiffs National Federation of the Blind of Texas ("NFB-TX") and the Coalition of Texans with Disabilities ("CTD")—because it requires them to rely on third parties to complete and mail-in the paper ballots, depriving them of the right to vote independently and in secrecy that is available to voters without disabilities using mail-in ballots. This is part of a long history of discriminatory barriers—

---

[1] For semantic convenience throughout this Complaint, we refer to voters who are unable to read or fill out a ballot by mail by reason of disability as "print disabilities."

from inaccessible transportation, to inaccessible polling places, to inaccessible voting machines—that people with disabilities, including blind voters, have had to endure.

By denying blind voters and voters with print disabilities equal access to the ballot-by-mail process based on their disabilities, the Texas Secretary of State violates Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794, *et seq*. These violations will be particularly harmful absent immediate relief for the November 3, 2020 election. Due to the current COVID-19 pandemic, Texas will require voters who cannot use a paper ballot to make an unfair choice. They must either: a) forfeit their right to vote privately and independently by relying on a third-party to assist them with an inaccessible paper ballot or b) risk their health and the health of their loved ones by traveling to a polling place to cast their vote in person in the midst of a pandemic. This choice is not necessary. The Texas Secretary of State can quickly and easily allow counties to offer voters with disabilities an accessible electronic ballot.[2] Plaintiffs seek a preliminary injunction to require Defendant to allow Texas counties to provide accessible electronic ballots to voters who are eligible to vote by mail and require accessible electronic ballots because of their disability.

## STATEMENT OF FACTS

### I.   Ballot by Mail Voting In Texas

Texas restricts ballot-by-mail voting to persons meeting certain criteria. To be eligible, a person must be age 65 or older, have a disability, be outside of the county, or be in jail, but

---

[2] In fact, under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. §§ 20301, *et seq.*¸ counties are already required to electronically send ballots to overseas military Texans.

otherwise eligible to vote.[3] Texas uses paper mail-in ballots for early vote-by-mail ballots. Voters receive a paper mail-in ballot in the mail, then complete the paper ballot and submit it via mail to the Early Voting Clerk in the voter's county. Compl. ¶¶ 63-70.

Paper mail-in ballots exclude persons with vision and print disabilities who cannot readily read or mark the ballot. Thus, persons who are blind or who have print disabilities must rely upon the assistance of a third-party to read them the ballot, mark the ballot for them, and return the ballot for them. *Id* at. ¶ 71. This reliance robs persons with disabilities of their fundamental right to vote by mail privately and independently. As other circuits have found, this violates the ADA and Section 504. *National Federation of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016); *Hindel v. Husted,* 875 F.3d 344, 349 (6th Cir. 2017). Defendant refuses to allow counties to offer an accessible electronic ballot which would allow Plaintiffs, and voters like them, to vote by mail privately and independently. Exhibit A, ¶ 15; Exhibit I.

## II.   Impact of COVID-19

As courts across the country have universally recognized, this country is in the midst of a pandemic that has altered daily life for everyone, including Plaintiffs and those similarly situated. *See e.g., South Bay United Pentecostal Church v Newsom*, 140 S. Ct. 1613 (2020) (Roberts, C.J., concurring in denial of application for injunctive relief). This pandemic has "no known cure, no effective treatment, and no vaccine." *Id*.

Texas has experienced a recent surge in COVID cases, making it the site of one of the worst outbreaks in the country.[4] As of July 23, 2020, 3,998,259 cases of COVID-19 have been

---

[3] *See* https://www.sos.texas.gov/elections/voter/reqabbm.shtml.

[4] *Texas Coronavirus Map and Case Count*, N.Y. Times https://www.nytimes.com/interactive/2020/us/texas-coronavirus-cases.html (last visited July 9, 2020).

reported with 143,701 deaths nationwide.[5] Texas accounts for 363,615 cases and 4,439 deaths. Currently, Texas has an estimated 152,778 active cases.[6] The new outbreak in Texas has caused Gov. Abbott to roll back aspects of the state's reopening, and to require face coverings be worn in public, though the face covering mandate is not applicable to polling locations.[7]

"There is no doubt that [the virus] poses risks of harm to all Americans, including Texas voters." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 412 (5th Cir. 2020). Wisconsin saw the risk of transmission of COVID during in-person voting following their primary election. The Wisconsin Department of Health Services directly traced 71 confirmed cases of COVID-19 to in-person voting that occurred on April 7, 2020. A recent study found that the real number is closer to 700 cases related to in-person voting. This accounted for almost 8% of Wisconsin's COVID cases five weeks following the election.[8]

Many persons with disabilities are at a higher risk of contracting COVID, and at higher risk for serious health consequences from COVID, than persons without disabilities. Persons with disabilities are three times more likely than adults without disabilities to have heart disease, stroke,

---

[5] United States COVID-19 Cases and Deaths by State, Ctrs. for Disease Control and Prevention ("CDC"), https://www.cdc.gov/covid-data-tracker/ (last visited July 14, 2020).

[6] COVID-19 in Texas (Dashboard), TX Health and Human Services, https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc 8b83 (last visited July 8, 2020).

[7] *See* Executive Order No. GA-29 relating to the use of face coverings during the COVID-19 disaster available at https://open.texas.gov/uploads/files/organization/opentexas/EO-GA-29-use-of-face-coverings-during-COVID-19-IMAGE-07-02-2020.pdf

[8] Chad D. Cotti et al., *The Relationship Between In-Person Voting and COVID-19: Evidence from the Wisconsin Primary*, National Bureau of Economic Research Working Paper Series, Working Paper 27187 (May 2020), https://www.nber.org/papers/w27187.pdf.

diabetes, cancer, or other preexisting conditions.[9] Additionally, people who have disabilities affecting their vision or mobility may not be able to effectively social-distance or avoid coming into close contact with others. Exhibit A, ¶ 14; Exhibit B ¶ 14; Exhibit C ¶ 13.

People who are blind, like Plaintiffs Semien and Franks, cannot transport themselves to the polling location. Thus, people who are blind are more likely to rely on public transportation or ride-sharing services to vote in person. Public transportation and ride-sharing services add an additional level of exposure for such individuals. Public transportation has the highest COVID death rate among all modes of commute.[10]

Defendant's refusal to allow counties to use an accessible vote-by-mail ballot places voters who are blind or have print disabilities such as Plaintiffs in an impossible position—deciding between sacrificing their right to vote privately and independently, or risking their lives to vote in-person.

## III.   Accessible Voting Systems

Several accessible vote-by-mail systems currently exist. After similar litigation, both Michigan and New York made their electronic ballot delivery systems required under the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA"), 52 U.S.C. §§ 20301, *et seq.*, as amended by the Military and Overseas Voter Empowerment Act ("MOVE Act"), Pub. L. No. 111-84, Subtitle H, §§ 575-589, 123 Stat. 2190, 2318-35 (2009) accessible and provided

---

[9]   See Coronavirus Disease 2019 (COVID-19): People with Disabilities, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-withdisabilities.html (last visited July 14, 2020).

[10] See Christopher R. Knittel and Bora Ozaltun, *What Does and Does Not Correlate with COVID-19 Death Rates*, National Bureau of Economic Research Working Paper Series. Working Paper 27391 (June 2020) https://www.nber.org/papers/w27391.pdf.

persons who are blind or have print disabilities with access to them.[11] For years, members of the military and overseas citizens have had access to electronic ballot delivery under UOCAVA.[12]

In addition to providing voters with print disabilities access to the UOCAVA system, states across the country have utilized other accessible voting systems including, but not limited to, Prime III, Democracy Live, Five Cedars, Dominion Voting, Voting Works (MyBallot), and Maryland's vote marking system.[13] Through these systems, voters with print disabilities can request, receive, and mark their ballots electronically, accessibly, and independently. Some provide for accessible electronic return of marked ballots.  Each system offers secure ballot delivery and ballot counting. Both Prime III, MyBallot and Maryland's system are available to states for free. Others can be financed through grant funding[14] or through additional Help America Vote Act funding provided to states to support mail-in voting through the CARES Act.[15]

Prime III is an open-source technology developed to make voting more accessible.[16] New Hampshire adopted Prime III and named it One4All. New Hampshire used One4All in the 2016 primaries and presidential election. Ohio has adopted Prime III for vote-by-mail voting after recent

---

[11] Office of Secretary of State Jocelyn Benson, Accessible Absent Voter Ballot Application Now Available (June 26, 2020) https://www.michigan.gov/sos/0,4670,7-127--533105--,00.html; The New York State Board of Elections Unveils Accessible Absentee Ballot Application (June 3, 2020) https://www.elections.ny.gov/NYSBOE/news/2020ReAccessibleAbsenteeBallotApplication.pdf.

[12] https://www.votetexas.gov/military-overseas-voters/index.html (last visited July 18. 2020).

[13] https://elections.maryland.gov/voting/accessibility.html (last visited July 13, 2020) ("If you have a disability and cannot mark your ballot independently, we offer an online tool to help you mark your ballot. With this tool, most voters with disabilities can make selections without help. If you would like to use this online tool, request an absentee ballot and check the box saying that you want to print your ballot from SBE's website.").

[14] One such program is Tusk Philanthropy's Mobile Voting Project, https://mobilevoting.org/.

[15] The CARES Act provided an additional $400 million to states to protect the 2020 elections from the effects of the novel coronavirus. https://www.eac.gov/payments-and-grants/2020-cares-act-grants.  Texas received $24.5 million.

[16] *See* http://www.primevotingsystem.com/ (last visited July 8, 2020).

litigation. Because its creator Dr. Jaun E. Gilbert decided to make Prime III an open-source technology, Texas counties can adopt Prime III for little to no cost.[17] Prime III has an integrated automatic speech recognizer ("ASR") accessible through a headset with a microphone, allowing persons to vote by touch, voice, or both.[18] When a voter uses the ASR, each candidate is randomly assigned a number and the person can vote by simply saying that number, preventing eavesdroppers from knowing who the person is voting for. This maintains the privacy and independence of persons with print disabilities.

Despite the multitude of options for providing safe, accessible electronic ballots for ballot-by-mail, the Defendant has refused to allow counties to adopt *any* accessible voting system for ballot by mail.

## IV.   The Individual Plaintiffs and Their Plans for Voting

Plaintiff Kenneth Semien is totally blind in his left eye and can only see shapes in his right eye. Compl. ¶ 38. He is the current board president of the Coalition of Texans with Disabilities, and is the past president of the American Council of the Blind of Texas. *Id.* at ¶ 19. Mr. Semien is a registered voter in the state of Texas, and he regularly votes in primary and general elections in his hometown of Beaumont, Texas. *Id.* at ¶¶ 37, 39. Mr. Semien has hypertension and is at a higher risk of severe health consequences if he contracts COVID-19. *Id.* at ¶ 41. Mr. Semien is eligible to vote by mail because he qualifies to do so under the Texas Election Code. *Id.* at ¶ 19. He has decided not to vote in-person because he cannot afford to risk his health. Exhibit A, ¶ 17. He is

---

[17] Stephen Key, *This Voting Invention Would Help Jurisdictions Significantly Reduce Their Costs*, Forbes (Nov. 29, 2018) https://www.forbes.com/sites/stephenkey/2018/11/29/this-voting-invention-would-help-jurisdictions-significantly-reduce-their-costs/#703fc5cf4042.

[18] Juan E. Gilbert et al., *Prime III: Where Usable Security and Electronic Voting Meet*, Auburn University, Dep't of Comput. Sci. and Eng'g (2007) http://www.usablesecurity.org/papers/primeIII.pdf.

unable to practice safe social distancing because he cannot see to maintain a six-foot distance when out in public and would have to rely on a ride to get to the polling location. Exhibit A, ¶ 14. He would like to vote independently and privately by mail-in ballot, but Mr. Semien is unable to complete a mail-in ballot independently because Defendant refuses to allow counties the option of offering accessible electronic ballots to individuals who are blind, thereby denying him his full and equal right to vote. Exhibit A, ¶¶ 15, 19; Exhibit I.

Plaintiff Jonathan Franks is an individual who is totally blind and the current Chair of the Mayor's Committee for People with Disabilities in Austin, Texas and is a member of the National Federation of the Blind of Texas. Compl. ¶ 20. Mr. Franks is a registered voter in the state of Texas and he regularly votes in primary and general elections in his hometown of Austin, Texas. *Id* at ¶ 48. Mr. Franks has Type 1 diabetes and is at a higher risk of severe health consequences if he contracts COVID-19. *Id* at ¶ 50. Mr. Franks is eligible to vote by mail because he qualifies to do so under the Texas Election Code. *Id.* at ¶ 20. He is unable to practice safe social distancing because he cannot see to maintain a six-foot distance when out in public and would have to rely on a ride to get to the polling location. Compl. ¶ 51. He would like to vote independently and privately by mail-in ballot, but Mr. Franks is unable to complete a mail-in ballot independently because Defendant refuses to allow counties the option of offering accessible electronic ballots to individuals who are blind, thereby denying him his full and equal right to vote. Exhibit A, ¶ 15; Exhibit B, ¶ 17; Exhibit I.

Plaintiff Sean Pevsner is an individual who has severe cerebral palsy and is a practicing lawyer in Texas. Compl. ¶ 21. Mr. Pevsner is a registered voter in the state of Texas and he regularly votes in primary and general elections in his hometown of Arlington, Texas. *Id* at ¶ 56. Mr. Pevnser is an individual with a compromised respiratory system secondary to cerebral palsy

and is at a higher risk of severe health consequences if he contracts COVID-19 *Id* at ¶ 59. Mr. Pevsner is eligible to vote by mail because he qualifies to do so under the Texas Election Code. *Id.* at ¶ 21. He is unable to practice safe social distancing because he needs assistance at the polling site. Exhibit C, ¶ 13. He would like to vote independently and privately by mail-in ballot, but Mr. Pevsner is unable to complete a mail-in ballot independently because Defendant refuses to allow counties the option of offering accessible electronic ballots to individuals with print disabilities, thereby denying him his full and equal right to vote. Exhibit A, ¶ 15; Exhibit C, ¶ 17; Exhibit I.

## LEGAL STANDARD

Plaintiffs seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest. *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009).

## ARGUMENT

By refusing to allow counties to provide an accessible electronic mail-in ballot, the Secretary of State deprives the Plaintiffs of their right to cast a private and independent vote by mail, a right that is afforded to Texas voters without disabilities who qualify to vote by mail. Importantly, Plaintiffs bring the instant cause of action during a global pandemic, which limits their ability to travel to the polls in-person and makes voting in-person or relying on third-party assistance a health risk.

### I.   Plaintiffs are Likely to Succeed on the Merits.

Establishing a party's likelihood of success on the merits "requires more than a mere possibility that relief will be granted." *Nken v. Holder*, 556 U.S. 418, 420 (2009). However, the

Supreme Court has also acknowledged that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Moreover, "it is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them fair grounds for litigation and thus for more deliberative investigation." *Id.*

To prevail on a discrimination claim under either Title II or Section 504, a plaintiff must establish that he (1) has a disability, (2) is otherwise qualified to participate in the service, programs, or activity of the public entity, and (3) is being denied the benefits of the service, program, or activity, or is otherwise subject to discrimination because of his disability. *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 (5th Cir. 2020).

## A. The plaintiffs are qualified voters with disabilities.

Because Plaintiffs are blind or have print disabilities and registered to vote in Texas, they are "qualified individual[s]" with a disability. *See* 42 U.S.C. §§ 12102(1), 12131(2); 29 U.S.C. § 705(20)(B). They are eligible to vote by mail under the disability provision of the Texas Election Code early vote by mail provision. *See* Tex. Elec. Code Ch. 82. As a program or activity of a state or local entity, voting by mail is covered by Title II of the ADA. *See National Fed'n of the Blind v. LaMone,* 813 F.3d 494 (4th Cir. 2016) ("On the whole, then, we think it is far more natural to view absentee voting—rather than the entire voting program—as the appropriate object of scrutiny for compliance with the ADA and the Rehabilitation Act"); *Disabled in Action v. Bd. of Elections in City of New York*, 752 F.3d 189 (2d Cir. 2014); *California Council of the Blind v. County of Alameda*, 985 F. Supp. 2d 1229, 1235 (N.D. Cal. 2013), *National Org. on Disability v. Tartaglione,*

No. 01-cv-1923, 2001 WL 1231717, at *4 (E.D. Pa. Oct. 11, 2001). The Department of Justice, as the enforcing agency of Title II, takes the same position.[19]

> **B.**   ***Defendant's prohibition on accessible mail-in voting deprives Plaintiffs of their right to vote in a private, independent manner.***

Plaintiffs also satisfy the third element because they have been denied the right to vote by mail in a manner that is "equal to that afforded others." 28 C.F.R. § 35.160(b)(2). The only available method for voting by mail in Texas—a paper ballot that must be filled out by hand--is "not as effective in affording equal opportunity" and does not "protect the privacy and independence of the individual with a disability." 28 C.F.R. § 35.130(b)(1)(iii), § 35.160(b)(2).

Title II of the ADA prohibits Defendants from requiring counties to administer ballots by mail in a manner that excludes qualified individuals with disabilities from participating in or denying them the benefit of vote-by-mail voting services or otherwise subjecting them to discrimination. 42 U.S.C. § 12132. The broad spectrum of unlawful "discrimination" under the ADA includes: (1) denying people with disabilities an equal opportunity to participate; (2) providing people with disabilities with a service that is not as effective in affording equal opportunity to obtain the same result, gain the same benefit, or reach the same level of achievement as that afforded to others; (3) failing to make reasonable modifications to policies, practices, and procedures when necessary to afford people with disabilities equal access to services, programs, and activities; and (4) failing to assure communication with people with disabilities is equally effective as with people without disabilities, including failing to provide auxiliary aids and services, such as accessible electronic and information technology. 28 U.S.C. §§ 35.130(b)(1)(ii), 35.130(b)(1)(iii), 35.130(b)(7)(i), 35.160.

---

[19] *See*, e.g., Investigation of Harris County at www.ada.gov/harris_count_lof.htm.

By refusing to allow counties to offer accessible electronic mail-in ballots, the Texas Secretary of State violates Title II of the ADA. Paper ballots deny voters with vision disabilities and other print disabilities equal access to the mail-in voting process. Completion of paper ballots requires voters with visual and print disabilities to have assistance—they must ask someone to read the ballot and complete it for them. Unlike voters without disabilities, they cannot vote in secrecy and their privacy is violated. Such a system denies blind voters and voters with print disabilities equal opportunity to participate in the mail-in voting process and affords them a service that is not as effective as that provided to voters without disabilities.

In *Lamone*, 813 F.3d 494, the Fourth Circuit held that Maryland election officials violated Title II of the ADA and Section 504 by relying exclusively on paper ballots in its absentee ballot process. Affirming the district court's finding that Maryland violated the ADA because voters with visual disabilities could not mark their paper ballots without assistance, unlike voters without such disabilities, the court determined that "[t]his sharp disparity makes obvious that defendants have provided 'an aid, benefit, or service [to disabled individuals] that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others.'" *Id*. at 506 (citations omitted). The court concluded:

> Voting is a quintessential public activity. In enacting the ADA, Congress explicitly found that "'individuals with disabilities … have been … relegated to a position of political powerlessness in our society, based on characteristics that are beyond the control of such individuals.'" *Tennessee v. Lane*, 541 U.S. 509, 516, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (quoting 42 U.S.C. § 12101(a)(7)). Ensuring that disabled individuals are afforded an opportunity to participate in voting that is equal to that afforded others, 28 C.F.R. § 35.130, helps ensure that those individuals are never relegated to a position of political powerlessness. *We affirm the district court's conclusion that by effectively requiring disabled individuals to rely on the assistance of others to vote absentee, defendants have not provided plaintiffs with meaningful access to Maryland's absentee voting program.*

*Id.* at 507 (emphasis added).

The law does not permit Defendant to require that disabled individuals rely upon the kindness, availability, and accuracy of nondisabled third parties to assist them in filling out their absentee ballots. *See, e.g., American Council of the Blind v. Paulson*, 525 F.3d 1256, 1264 (D.C. Cir. 2008) (While "[t]here was a time when disabled people had no choice but to ask for help—to rely on the kindness of strangers[,] … [i]t can no longer be successfully argued that a blind person has meaningful access to currency if she cannot accurately identify paper money without assistance.") (alterations in original).

### C. The implementation of an accessible vote-by-mail system does not fundamentally alter the state's programs or services.

A public entity may avoid accommodating individuals with disabilities if it can show that doing so would fundamentally alter its program. 28 C.F.R. § 35.164; 28 C.F.R. § 35.130(b)(7)(i). It would be Defendant's burden to prove this affirmative defense. Offering an accessible mail-in voting for blind individuals and individuals with print disabilities will in no way fundamentally alter the nature of the mail-in voting system in Texas. Here, Defendant could not make such a showing.

Defendant may argue that, because the Texas Election Code does not specifically provide for accessible electronic ballots for people with print disabilities, such ballots are prohibited. The Supreme Court has held that Title II of the ADA, "at least in certain circumstances, represents a valid exercise of 14th Amendment powers . . . and as such it trumps state regulations that conflict with its requirements." *Lamone*, 813 F.3d at 508 ("As an initial matter, the strong form of defendants' argument – that the mere fact of a state statutory requirement insulates public entities from making otherwise reasonable modifications to prevent disability discrimination – cannot be correct. The Constitution's Supremacy Clause establishes that valid federal legislation can pre-

empt state laws."). *See also Hindel,* 875 F.3d 344, 349 ("a state procedural requirement may not excuse a substantive ADA violation).

Nor will Defendant succeed in arguing that electronic ballots for people with print disabilities are fundamentally at odds with security or other legitimate voting concerns. The fact that Texas counties already provide electronic ballots to overseas voters through their UOCAVA programs demonstrates that doing so for people with print disabilities, as required by the ADA and Section 504, does not substantively change the mail-in voting program at all. In addition, the fact that other states have regularly used accessible absentee ballots for years without incident further demonstrates that no fundamental alteration is at stake.

Nor will it be burdensome for Defendant to release its prohibition on counties offering accessible electronic ballots. As explained, accessible absentee or mail-in voting systems are readily available to the state and counties to allow individuals with print disabilities to vote by mail-in ballots in privacy—like other voters—for the November 3, 2020 election. All that must happen is for the Defendant to allow counties to implement them.

## II.    Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

Absent a preliminary injunction, Plaintiffs will be deprived of the right to vote privately and independently. Irreparable harm may be presumed when a defendant has violated a civil rights statute such as the ADA. *Middleton-Keirn v. Stone,* 655 F.2d 609, 611 (5th Cir. 1981) ("[I]rreparable injury should be presumed from the very fact that the statute has been violated."); *see also Gresham v. Windrush Partners, Ltd.,* 730 F.2d 1417, 1423 (11th Cir. 1984) ("irreparable injury may be presumed from the fact of discrimination and violations of fair housing statutes"); *EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th Cir. 1984) (holding that the plaintiffs faced

injuries Congress explicitly sought to avoid through the ADEA, and that constituted irreparable harm).

Irreparable harm may also be presumed when a statute, such as the ADA, explicitly provides for injunctive relief. *See* 42 U.S.C. § 12188(a)(2). "The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm." *Jones v. Governor of Fla.*, 950 F.3d 795, 828 (11th Cir. 2020).

A plaintiff may also establish irreparable harm when "there is a real or immediate threat that he will be wronged again." *Hainze v. Richards*, 207 F.3d 795, 802 (5th Cir. 2000). Without a fix for the November 3, 2020 election, the harm Plaintiffs face will continue indefinitely.

Further, forcing blind individuals to interact with third parties in order to vote not only takes away their right to a private ballot, but also forces Plaintiffs to risk their health unnecessarily during the COVID-19 pandemic, either by interacting with a third party to assist in marking their ballot or by voting at a polling place in person.

Here, as in *Lamone*, because Plaintiffs "are being deprived of their right to vote by absentee ballot privately and independently," the "[r]emedies available at law are inadequate to compensate [them] for [this] violation." *National Fed'n of the Blind, Inc. v. Lamone*, No. CIV.A. RDB-14-1631, 2014 WL 4388342, at *15 (D. Md. Sept. 4, 2014), *aff'd sub nom. National Fed'n of the Blind v. Lamone*, 813 F.3d 494 (4th Cir. 2016).

## III. The Balance of Equities Tips in Favor of the Plaintiffs.

In deciding whether a preliminary injunction is proper, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat'l. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). Courts should

pay particular attention to the public consequences in employing the extraordinary remedy of injunction. *Id*.

The balance of equities strongly favors the Plaintiffs in the present case. As established above, the Plaintiffs face irreparable harm absent injunctive relief. If the Defendant is allowed to continue to prevent counties from using accessible electronic mail-in ballots, the Plaintiffs and other similarly situated individuals will have their right to vote privately and independently stripped from them. Plaintiffs will have to decide between relying on a third-party to vote by mail or risking their lives to vote in-person amidst a global pandemic, or not voting at all.

The Secretary of State, however, faces no significant burden in allowing counties to implement an accessible voting system for persons with print disabilities. It does not cost the Secretary of State anything to allow counties to provide accessible electronic ballots. Counties themselves have several no-cost and low-cost options, as well as access to federal HAVA funding and private foundation funding for these purposes.

**IV.    Preliminary Relief Advances Public Interest.**

The final factor, whether relief advances public interest, also cuts in Plaintiffs' favor. "The third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, (2009). Because the balance of equities strongly favors the Plaintiffs, granting the injunction similarly advances the public interest.

The enfranchisement of a disadvantaged group of citizens advances the public interest. Courts across the country recognize the fundamental importance of the right to vote. "The right to vote is fundamental to our constitutional democracy." *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 413 (5th Cir. 2020). Further, the public has a "strong interest in exercising the fundamental

political right' to vote," meaning that "[t]he public interests therefore favors permitting as many qualified voters to vote as possible." *Obama for Am. v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012).

**V.     Plaintiffs Should Not be Required to Post a Bond.**

Plaintiffs request that they not be required to post any cash bond.  The Court has the discretion to issue a preliminary injunction without requiring the Plaintiffs to give security.  *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302-303 (5th Cir. 1978) (The amount of bond "is a matter of discretion of the trial court; it may elect to require no security at all.") (cited approvingly in *Gordon v. City of Houston, Tex.*, 2015 WL 138115 at *16 (S.D. Tex. January 9, 2015)). This Court should not require a bond because the Plaintiffs have brought this claim to protect their fundamental right to vote. Requiring a bond would place an undue and effectively unconstitutional hardship on the Plaintiffs by requiring Plaintiffs to pay a tax for their right to vote. *See* U.S. Const., amend XXIV.

## CONCLUSION

Plaintiffs respectfully request that this Court grant their Motion for a Preliminary Injunction, and order Defendants to immediately allow counties to implement a ballot-by-mail voting system that is accessible to individuals with print disabilities, and that can be completed independently and privately in order to bring their conduct into compliance with federal law. Plaintiffs also request such other and further relief to which they are justly entitled.

Respectfully submitted,

 */s/ Lia S. Davis*
LIA S. DAVIS
Texas State Bar No. 24071411
PETER HOFER

*Plaintiffs' Motion for Preliminary Injunction*                                          17

Texas State Bar No. 09777275
BRIAN EAST
Texas State Bar No. 06360800
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)
Email: ldavis@drtx.org
Email: phofer@drtx.org
Email: beast@drtx.org


EVE HILL

*/s/ Eve Hill*
*Admitted Pro Hac Vice*
Brown Goldstein & Levy
120 E. Baltimore St., Ste. 1700
Baltimore, MD 21202
(410) 962-1030 (phone)
(410) 385-0869 (fax)
ehill@browngold.com

*Counsel for Plaintiffs*


## CERTIFICATE OF CONFERENCE

Since this motion for a preliminary injunction is being filed three business days after the

Original Complaint, counsel for Plaintiffs do not yet know the counsel representing the Defendant.

Based on the response from the Secretary of State attached as Exhibit I, Plaintiffs assume

Defendant is opposed to this motion.

*/s/ Lia S. Davis*
Lia S. Davis

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 29, 2020, a copy of the foregoing was filed electronically and

served on Defendant via hand delivery at the address below:

Ruth Hughs
Texas Secretary of State
1019 Brazos, Room 105
Austin, Texas 78701

> _/s/ Lia S. Davis_
> Lia S. Davis