IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KENNETH SEMIEN, JONATHAN FRANKS, SEAN PEVSNER; NATIONAL FEDERATION OF THE BLIND OF TEXAS; and THE COALITION OF TEXANS WITH DISABILITIES,<br><br>*Plaintiffs*,<br><br>v.<br><br>RUTH HUGHS, in her official capacity as the Texas Secretary of State,<br><br>*Defendant*. | CIVIL ACTION NO. 1:20-cv-00789-LY |

**THE TEXAS SECRETARY OF STATE'S MOTION TO DISMISS**

TABLE OF CONTENTS

Table of Contents ............................................................................................................................ii
Introduction....................................................................................................................................1
Background....................................................................................................................................1
Argument .......................................................................................................................................3
    I.     Plaintiffs Lack Standing................................................................................3
    II.    Sovereign Immunity Bars Plaintiffs' Claims ................................................5
    III.   Plaintiffs Fail to State a Claim.......................................................................8
         A.    Voting by Mail Is Not a Service Provided by the Secretary ...............9
         B.    Federal Law Does Not Mandate Electronic "Mail-In" Ballots........11
            1.    Texas Does Not Discriminate against Plaintiffs....................11
            2.    Texas Already Provides Reasonable Accommodations.......13
            3.    Plaintiffs Have Not Plausibly Alleged Causation ..................14
            4.    The Proposed Relief Would Fundamentally Alter Texas Elections ..15
         C.    The Secretary Is Not Subject to the Rehabilitation Act.....................15
Conclusion ..................................................................................................................................16

INTRODUCTION

Texas law gives Plaintiffs numerous options for voting. They can vote early or on Election Day. They can vote in a polling place, from a car at the curb of a polling place, or by mail. Each of those options is open to voters with disabilities. Yet Plaintiffs demand that Texas counties electronically transmit ballots to voters' homes over the Internet and allow for the electronic marking of those ballots.

But federal law does not permit Plaintiffs to sue Texas Secretary State Ruth Hughs for such relief. In *Lightbourn v. County of El Paso*, the Fifth Circuit held that voters who were blind failed to state a claim under the Americans with Disabilities Act ("ADA") against the Secretary based on their inability to vote without assistance. 118 F.3d 421, 432 (5th Cir. 1997). The Fifth Circuit dismissed the case, in part, because the ADA is not an election law. *Id.* at 430. Therefore, the Secretary is not charged with policing the ADA compliance of the 3,000 or so local jurisdictions responsible for administering Texas's elections. *Id.* at 428 n.7, 430–31. "In sum, the Secretary has no duty under either Texas law or the ADA to take steps to ensure that local election officials comply with the ADA." *Id.* at 432. So too here. Plaintiffs have not plausibly alleged that they face any harm attributable to the Secretary, much less that federal law requires upending Texas's systems of accommodations for voters with disabilities.

BACKGROUND

"[P]olitical subdivisions . . . administer elections in Texas." *Lightbourn v. Cty. of El Paso*, 118 F.3d 421, 431 (5th Cir. 1997). "[A]lthough the Texas Election Code designates the Secretary the chief elections official in Texas, the Secretary does not conduct elections. Rather, the state's 3,000 or so political subdivisions run general and special elections, while the political parties conduct primary elections." *Id.* at 428 n.7. In particular, local officials are responsible for the implementation of voting by mail. They "have the official ballot prepared," Tex. Elec. Code § 52.002, and "provide an official ballot to the applicant," *id.* § 86.001(b).

1

Local officials are also responsible for selecting voting systems in Texas. A "voting system" is "a method of casting and processing votes that is designed to function wholly or partly by use of mechanical, electromechanical, or electronic apparatus." *Id.* § 121.003(1). "The decision on whether to adopt a voting system is made by" various local officials, not the Secretary. *Id.* § 123.001(b).

From their pleadings, it appears that Plaintiffs may be advocating for the adoption of a new voting system or a new use of a voting system for "early voting by mail." *Id.* § 123.006(b). To the extent that the proposed remedies would constitute a voting system, it is true that the Secretary reviews and approves voting systems before they are used, *see id.* § 122.038, but "[P]laintiffs do not allege . . . that they presented any voting machine to the Secretary or that [s]he failed to approve such a machine," *Lightbourn*, 118 F.3d at 431. The Election Code does not "oblig[e] the Secretary to take affirmative steps to solicit and approve equipment that ensures a completely secret ballot for blind voters." *Id.*

Additionally, local election officials do not report to the Secretary. They are independently elected or appointed and are not "subject to the Secretary's control." *Jacobson v. Fla. Sec'y of State*, 957 F.3d 1193, 1207 (11th Cir. 2020) (explaining why the actions of county officials could not be attributed to Florida's Secretary of State). The Secretary's status as the "chief election officer" is not "a delegation of authority to care for any breakdown in the election process." *Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972). It does not allow her to control local officials' implementation of the Election Code. *See In re Stalder*, 540 S.W.3d 215, 218 n.9 (Tex. App.—Hous. [1st Dist.] 2018, no pet.) (expressing doubt that a "party chair lacked the authority to then form and act upon her own ultimate legal judgment" despite "having received the Secretary of State's assistance and advice in response to an inquiry"); *Ballas v. Symm*, 351 F. Supp. 876, 888 (S.D. Tex. 1972), *aff'd*, 494 F.2d 1167 (5th Cir. 1974) ("Plaintiff admits that the Secretary's opinions are unenforceable at law and are not binding."). And the Secretary does not have a duty to "ensure statewide compliance with the ADA by political subdivisions that

administer elections in Texas." *Lightbourn*, 118 F.3d at 430–31.

<div align="center">ARGUMENT</div>

With that proper understanding of Secretary Hughs's limited role in the administration of mail-in voting in Texas, consistent with the Fifth Circuit's analysis in *Lightbourn*, Plaintiffs' claims fail. First, Plaintiffs do not have Article III standing. Second, Plaintiffs' claims are barred by sovereign immunity. Third, Plaintiffs have not plausibly alleged the elements of their claims.

## I. Plaintiffs Lack Standing

Article III standing requires: (1) injury in fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. The Supreme Court has "repeatedly reiterated that 'threatened injury must be *certainly impending* to constitute injury in fact,' and that '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation omitted).

Plaintiffs seem to argue that they will be injured if the Secretary rejects a county's request to use a mail-in balloting system with the features they prefer. *See* ECF 1 ¶ 80 (alleging counties could adopt Plaintiffs' preferred system "[i]f permitted by Defendant"). But Plaintiffs do not identify a single county or political subdivision that would use their preferred system but for the Secretary's supposedly impending denial. Nor have Plaintiffs identified a single instance in which the Secretary prohibited an election authority from providing voters with Plaintiffs' preferred accommodation. Indeed, Plaintiffs' argument misunderstands Secretary Hughs's role. As discussed above, local officials are responsible for preparing and distributing mail-in ballots. Tex. Elec. Code §§ 52.002, 86.001(b). And local officials, not the Secretary, decide whether to adopt a specific voting system. *Id.* § 123.001(b). To the extent Plaintiffs claim they will be injured by receiving allegedly "inaccessible" mail-in ballots, that injury is not "fairly traceable to the challenged action of the defendant." *Lujan v. Defs. of Wildlife*, 504 U.S. 555,

<div align="center">3</div>

560 (1992) (quotation and alterations omitted). Rather, they are "the result of the independent action of some third party not before the court." *Id.*; *see also Jacobson*, 957 F.3d at 1207 (holding that the plaintiffs lacked standing because state "law tasks [local officials], independently of the Secretary, with printing the names of candidates on ballots").

To be clear, Secretary Hughs does not believe that the electronic delivery of mail-in ballots to domestic, non-military Texas voters is allowed under current law. *See* Tex. Elec. Code § 86.003(a) ("The balloting materials for voting by mail shall be provided to the voter by mail."). But that provision does not govern the Secretary's actions because she does not send out mail-in ballots and cannot force any county to act in a manner consistent with the statute. As such, Plaintiffs' alleged injury is neither caused by Secretary Hughs nor redressable by an injunction against her. *Cf. Lightbourn*, 118 F.3d at 432 ("In sum, the Secretary has no duty under either Texas law or the ADA to take steps to ensure that local election officials comply with the ADA."). And the Secretary cannot force local officials to adopt a new voting system. *See Okpalobi v. Foster*, 244 F.3d 405, 427 (5th Cir. 2001) (en banc) (finding no standing "[b]ecause these defendants have no powers to redress the injuries alleged"). In short, relief against the Secretary would be meaningless.

Under Texas law, the Secretary does have a role in approving voting systems. *See* Tex. Elec. Code § 123.006(b). It is unclear whether the systems that Plaintiffs seek constitute voting systems. But to the extent that they do, Secretary Hughs has no obligation to "take affirmative steps to solicit and approve equipment" or voting systems. *Lightbourn*, 118 F.3d at 431. As a result, the only way the Secretary could consider whether to approve a particular voting system is if someone submits an application for approval. Plaintiffs do not allege that they have submitted an application or that they will in the future. Plaintiffs also do not allege that anyone else has submitted an application or that anyone else will in the future. And Plaintiffs do not allege that Secretary Hughs has denied approval of any such application. In light of these omissions, Plaintiffs have not plausibly alleged a "certainly

4

impending" injury traceable to the Secretary's actions.

Although *OCA-Greater Houston v. Texas* found that the Secretary has a sufficient causal connection for that facial challenge to the constitutionality of a state election law, its reasoning does not apply here. 867 F.3d 604 (5th Cir. 2017). Plaintiffs bring as-applied statutory claims, not facial constitutional claims. *See* ECF 1 ¶¶ 94–135. This Court has already recognized this distinction. In *City of San Antonio v. Edwards Aquifer Authority*, No. 5:12-cv-620, 2014 WL 12495605, at *6 n.5 (W.D. Tex. Mar. 31, 2014), the Court distinguished *Lightbourn*, in which "a challenge was made to the state voting system under the Americans with Disabilities Act," and the Secretary was not a proper defendant, from a case "challenging the constitutionality of Texas election laws."

In sum, a declaratory judgment against the Secretary would not bind local officials—the parties responsible for administering mail-in voting in Texas. Rule 65 provides that a court "order binds only . . . the parties"; their "officers, agents, servants, employees, and attorneys"; and "other persons who are in active concert or participation with" the foregoing. Fed. R. Civ. P. 65(d)(2). Local officials do not fit any of those categories, and Plaintiffs provide no contrary argument. But even if a declaratory judgment would bind local officials, that would not satisfy Article III. *See Lujan*, 504 U.S. at 560 (requiring traceability to "the defendant"); *Jacobson*, 957 F.3d at 1209 ("If a plaintiff sues the wrong defendant, an order enjoining the correct official who has not been joined as a defendant cannot suddenly make the plaintiff's injury redressable."). Simply put, Secretary Hughs cannot provide the relief that Plaintiffs are seeking.

## II.     Sovereign Immunity Bars Plaintiffs' Claims

Sovereign immunity precludes claims against state officials unless the *Ex parte Young* exception applies. *See McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004).[1] *Ex parte Young* "rests

---

[1] Plaintiffs sued the Secretary rather than the State itself, and they do not appear to rely on either abrogation or waiver. Nonetheless, the Secretary notes that neither Title II of the ADA nor Section 504 of the Rehabilitation Act validly abrogates Texas's sovereign immunity related to the claims here.

on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. The doctrine is limited to that precise situation . . . ." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted).

*Ex parte Young* does not apply here for at least three reasons. First, Plaintiffs have not established that the Secretary is likely to use her enforcement authority (which she lacks). Second, Plaintiffs complain about enforcement by local officials who are not parties to this case. Third, *Ex parte Young* does not authorize mandatory injunctions requiring official state action.

First, even where a state official "has the authority to enforce" a law, a plaintiff must further allege that the state official "is likely to" enforce the law in a way that would "constrain" the plaintiff. *City of Austin v. Paxton*, 943 F.3d 993, 1001–02 (5th Cir. 2019). A state official must have not only "the particular duty to enforce the statute in question" but also "a demonstrated willingness to exercise that duty." *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). Here, Plaintiffs have not plausibly alleged that the Secretary "is likely to" reject a local government's application to use a voting system that meets Plaintiffs' preferences. They also have not alleged any past rejections that would reveal "a demonstrated willingness" to reject such applications. In fact, as explained above, Secretary Hughs lacks authority to enforce the provisions that they are challenging.

Second, *Ex parte Young* does not allow Plaintiffs to challenge third parties' enforcement actions by suing the Secretary. *Ex parte Young* applies only when the plaintiff challenges *the defendant's* enforcement actions. That is why plaintiffs invoking *Ex parte Young* must "point[] to specific enforcement actions of the respective defendant state officials warranting the application of the *Young*

---

*See Reickenbacker v. Foster*, 274 F.3d 974, 976 (5th Cir. 2001). Nor is there a valid waiver of sovereign immunity. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012) (finding a State is unconstitutionally coerced when it "stands to lose not merely 'a relatively small percentage' of its existing [federal] funding, but *all* of it").

6

exception." *City of Austin v. Paxton*, 943 F.3d 993, 1001 (5th Cir. 2019).

As explained above, many aspects of Texas's election system are implemented by local officials rather than the Secretary. Relevant to Plaintiffs' claims here, local officials are responsible for preparing and mailing ballots. *See* Tex. Elec. Code § 52.002 (requiring local or party officials to "have the official ballot prepared"); *id.* § 86.001(b) ("If the applicant is entitled to vote an early voting ballot by mail, the [local early voting] clerk shall provide an official ballot to the applicant as provided by this chapter."). Thus, Plaintiffs' complaint that mail-in ballots "are transmitted, marked, and returned entirely on paper" centers on the actions of local officials, not the actions of the Secretary. ECF 1 ¶ 1.

Recent Fifth Circuit precedent confirms that the Secretary's tenuous connection to the challenged statutes cannot support a claim under *Ex parte Young*. *See In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020) (holding that sovereign immunity barred claims because "the Governor lacks the required enforcement connection to" an executive order and any enforcement role for the Attorney General was speculative); *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (holding that sovereign immunity barred a suit because the plaintiff had "no evidence that the Attorney General may 'similarly bring a proceeding' to enforce § 250.007").

This Court has previously concluded the Secretary is not immune from claims related to her purported state-law duty "to obtain and maintain uniformity in the application, operation, and interpretation of this code and of the election laws outside this code." *Miller v. Hughs,* No. 1:19-cv-1071-LY, 2020 WL 4187911, at *3 (W.D. Tex. July 10, 2020) (quotation omitted). But this case is not about election laws or uniformity. Plaintiffs complain about local noncompliance with the ADA and the Rehabilitation Act, neither of which are election laws. Recognizing this distinction, the Fifth Circuit has already held "that the ADA is not an election law" that could trigger the Secretary's "uniformity" obligation. *Lightbourn*, 118 F.3d at 430.

Third, the *Ex parte Young* exception is limited to injunctions "prevent[ing] [a state official] from

doing that which he has no legal right to do." *Ex parte Young*, 209 U.S. at 159. It does not authorize injunctions directing "affirmative action." *Id.* Sovereign immunity bars constitutional claims "if the relief requested cannot be granted by merely ordering the cessation of the conduct complained of but will require affirmative action by the sovereign," *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 691 n.11 (1949), including "cases where the [defendant] sued could satisfy the court decree only by acting in an official capacity." *Zapata v. Smith*, 437 F.2d 1024, 1026 (5th Cir. 1971); *see also United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 548 (10th Cir. 2001). Thus, the Court cannot order "the Secretary to promulgate a rule requiring [local election officials] to [perform their duties] contrary to" currently existing state law. *Jacobson*, 957 F.3d at 1211–12.

### III. Plaintiffs Fail to State a Claim

Plaintiffs fail to plead facts plausibly alleging a violation of either the ADA or the Rehabilitation Act. *See* Fed. R. Civ. P. 12(b)(6).

To state "a prima facie case of discrimination under the ADA," a plaintiff must plausibly allege three elements: "(1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability." *Smith v. Harris Cty.*, 956 F.3d 311, 317 (5th Cir. 2020) (quoting *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)); *see also Lightbourn*, 118 F.3d at 428.

The Rehabilitation Act has the same requirements, except it is stricter in two respects. First, the causation requirement is more demanding. The exclusion, denial, or discrimination must be "solely by reason of" a plaintiff's disability. *Cadena v. El Paso Cty.*, 946 F.3d 717, 723 n.1 (5th Cir. 2020). Second, the Rehabilitation Act requires "that the specific program or activity with which [the plaintiff is] involved receives or directly benefits from federal financial assistance." *Lightbourn*, 118 F.3d at 427.

8

For "a failure-to-accommodate claim" under the ADA, a plaintiff must plausibly allege that "(1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Smith*, 956 F.3d at 317 (quoting *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015)).

### A.   Voting by Mail Is Not a Service Provided by the Secretary

For all of their claims, Plaintiffs must plausibly allege that the service, program, or activity is "provided by" the public entity being sued. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998); *see Ivy v. Williams*, 781 F.3d 250, 255 (5th Cir. 2015), *vacated as moot sub nom., Ivy v. Morath*, 137 S. Ct. 414 (2016). Plaintiffs' claims fail because neither voting nor voting by mail is "provided by" the Secretary.

The Fifth Circuit's opinion in *Ivy v. Williams* illuminates the "provided by" standard. 781 F.3d 250 (5th Cir. 2015).[2] There, the Fifth Circuit held that plaintiffs could not state a claim against the Texas Education Agency regarding "driver education" because TEA did "not provide the program, service, or activity of driver education." *Id.* at 258. TEA did not teach driver education. *Id.* at 255. It merely regulated and supervised the schools that did. The agency therefore did not "provide[]" the service for purposes of the ADA and the Rehabilitation Act. TEA's pervasive regulation and supervision of driver education schools did not transform the driver-education service offered by the schools into one for which the agency was responsible. *Id.* at 257. Support from the agency, such as providing sample course materials, did not bring the schools' programs or services under the agency's control for purpose of the ADA. *Id.* at 258.

The same logic applies here. As explained above, local election officials administer Texas elections in general and voting by mail in particular. They receive and review ballot applications, Tex.

---

[2] Although the opinion was vacated by the Supreme Court based on mootness, its reasoning is still "helpful" and "persuasive." *Huffman v. Univ. Med. Ctr. Mgmt. Corp.*, No. 2:17-cv-4480, 2017 WL 4960268, at *3, *4 (E.D. La. Nov. 1, 2017) (discussing *Ivy*).

Elec. Code § 86.001, mail carrier and ballot envelopes to voters, *id.* § 86.002, receive and process marked ballots, *id.* §§ 86.006, 86.007(b), 86.011, verify voter signatures, *id.* § 87.027(i), and count the results, *id.* § 87.061. The Secretary does not send or receive mail-in ballots.

In substance, Plaintiffs would impose supervisory liability on the Secretary. But the Fifth Circuit rejected that tactic in *Lightbourn*. There, a group of plaintiffs who were blind and mobility-impaired sued the Secretary because the voting equipment at their polling places did not allow them to vote with complete secrecy. *Lightbourn*, 118 F.3d 423–24. The district court had held that the Secretary had a positive obligation to ensure that local election authorities complied with the ADA—one that the Secretary had violated, it concluded, by failing to encourage the development and adoption of new voting systems. Reversing the district court, the Fifth Circuit concluded that the Secretary was not responsible for local officials' non-compliance with the ADA. *See id.* at 432 (holding that the Secretary has "no duty under either Texas law or the ADA to take steps to ensure that local officials comply with the ADA"). The court dismissed the case for failure to state a claim against the Secretary.[3]

In reaching this decision, the Fifth Circuit analyzed the Secretary's legal obligations. First, many provisions in the Election Code "give discretion to the Secretary to take some action," but "[p]rovisions merely authorizing the Secretary to take some action do not confer a legal duty on [her] to take the contemplated action." *Lightbourn*, 118 F.3d at 429. Second, although "[t]he Texas Election Code does contain some provisions requiring the Secretary to take action with respect to elections," they do not make the Secretary responsible for local compliance with the ADA. *Id.* Those duties relate to local enforcement of "election laws," but "the ADA is not an election law." *Id.* at 429–30.

---

[3] Although this portion of *Lightbourn* did not consider the Rehabilitation Act, the court's reasoning is equally applicable to Plaintiffs' Rehabilitation Act claim. "The language in the ADA generally tracks the language set forth in the [Rehabilitation Act]," *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002), so "precedents interpreting either law generally apply to both," *Smith*, 956 F.3d at 317.

For the reasons the Fifth Circuit explained in *Lightbourn*, Plaintiffs cannot sue the Secretary for alleged future violations of the ADA or the Rehabilitation Act that local officials may commit.

### B.  Federal Law Does Not Mandate Electronic "Mail-In" Ballots

Plaintiffs argue that the ADA and the Rehabilitation Act require States to provide electronic ballots. The Court should reject that argument, just as the Civil Rights Division of the United States Department of Justice has. After investigating a complaint from a voter who was blind about being unable to vote without assistance, DOJ concluded election officials are "not . . . required to provide Braille ballots or electronic voting in order to enable individuals with vision impairments to vote without assistance." It reasoned that, "[a]lthough providing assistance to blind voters does not allow the individual to vote without assistance, it is an effective means of enabling an individual with a vision impairment to cast a ballot." The ADA, it explained, "encompasses the concept of equivalent, as opposed to identical services." This conclusion was also "consistent with long-standing interpretation of section 504 of the Rehabilitation Act."[4]

For the reasons explained by DOJ and the reasons explained below, Plaintiffs have not plausibly alleged that federal law mandates the use of electronic ballots in the way Plaintiffs request.

#### 1.  Texas Does Not Discriminate against Plaintiffs

Plaintiffs' discrimination claims fail because Texas does not discriminate against voters with disabilities. Plaintiffs are not "excluded from participation in, or being denied benefits of," or "otherwise being discriminated against" in voting. *Smith*, 956 F.3d at 317. Plaintiffs concede that they are legally allowed to vote, and they that they have in fact voted in the past. *See, e.g.*, ECF 1 ¶¶ 39, 48, 56.

---

[4] Letter of Findings from the Chief of the Coordination and Review Section, Civil Rights Division, U.S. Department of Justice (Aug. 25, 1993). The letter can be downloaded at https://www.justice.gov/crt/foia/file/669531/download. It is also available as Exhibit 1 of ECF 58 in *American Association of People with Disabilities v. Smith*, No. 3:01-cv-1275 (M.D. Fla. Dec. 5, 2002).

Plaintiffs have multiple options: (1) voting in a polling place during early voting, (2) curbside voting during early voting, (3) voting in a polling place on Election Day, (4) curbside voting on Election Day, and (5) voting by mail. *See* Tex. Elec. Code §§ 41.001, 64.009, 81.001. These are the same options offered to other voters, except that voters who are not disabled may not be eligible for curbside voting or voting by mail. *See id.* §§ 64.009, 82.002(a).

To be sure, Plaintiffs are not satisfied with these options. They believe election officials should modify Option 5 so that they can vote "by mail" using electronic ballots. But Plaintiffs' dissatisfaction does not mean that they are being excluded, denied, or discriminated against. There is no doubt Plaintiffs have access to one or more methods of voting.

Texas's "program of voting comprises its entire voting program, encompassing all of its polling locations throughout the [relevant jurisdiction], as well as its alternative and absentee ballot programs." *Kerrigan v. Phila. Bd. of Election*, No. 2:07-cv-687, 2008 WL 3562521, at *13 (E.D. Pa. Aug. 14, 2008); *see also* 28 C.F.R. § 35.150 (explaining that "service, program, or activity, *when viewed in its entirety*" must be accessible but that a public entity does not necessarily need to "make *each* of its existing facilities accessible") (emphases added).

That makes sense, especially in the voting context. No one has a right to vote by a specific method. The law protects Plaintiffs' "right to vote," not "a claimed right to receive absentee ballots." *McDonald v. Bd. of Election Comm'rs of Chicago*, 394 U.S. 802, 807 (1969).

Plaintiffs rely on *National Federation of the Blind v. Lamone*, but that case expressly rested on the "significant" fact that Maryland provides absentee ballots "to the entire Maryland electorate at the option of each individual voter." 813 F.3d 494, 504 (4th Cir. 2016). The court emphasized that "[a]bsentee ballots are not provided only to a limited set of voters with a demonstrated need to vote absentee." *Id. Lamone* does not apply here because Texas law is precisely the opposite of Maryland law in that respect. The Texas Legislature has been "cautious in allowing voting by mail." *In re State*, 602

12

S.W.3d 549, 558 (Tex. 2020). It has "has very deliberately limited voting by mail to voters in specific, defined categories." *Id.* at 559. As a result, voting by mail in Texas is better characterized as an accommodation for limited classes of voters, not a separate service, program, or activity. *See* Tex. Elec. Code §§ 82.001–.004.

### 2. Texas Already Provides Reasonable Accommodations

Plaintiffs have not plausibly alleged that Texas has "failed to make reasonable accommodations" in voting. *Smith*, 956 F.3d at 317. Texas law provides numerous accommodations for voters who are disabled.

Voters with disabilities qualify automatically for a ballot by mail, which they can apply for as early as January 1st of the year in which the election is scheduled to occur. Voters with disabilities may request assistance from anyone of their choosing, except their employer or an agent of a labor union to which the voter belongs. Tex. Elec. Code §§ 64.032, 86.010.

Moreover, Texas law also ensures accommodations will be made for in-person voting. At least one voting station at each polling location must have an accessible voting system that allows voters to cast a ballot both independently and secretly. *Id.* § 61.012. Polling locations must meet strict standards, including curb cuts or temporary nonslip ramps, ground floor access, wide doorframes, handrails, and the removal of any barrier that impedes a voter's pathway to the voting station. *Id.* § 43.034. To the extent voters cannot enter a polling location, local election officials must offer alternatives, such as curbside voting, which allows voters to vote without ever leaving their cars. *Id.* § 64.009.

These accommodations may not match Plaintiffs preferences perfectly, but they offer Plaintiffs meaningful opportunities to vote. That is enough under federal law. The ADA and the Rehabilitation Act impose a duty to make reasonable accommodations, but not every difference in a person's ability to access a public program or service is actionable. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003) (holding that neither the ADA nor the Rehabilitation requires equal access

or equal results for individuals with disabilities). Rather, the statutes require only that Plaintiffs' access be meaningful. *See Alexander v. Choate*, 469 U.S. 287, 301 (1985) (holding that a reasonable accommodation must give qualified individuals "meaningful access"); *Cadena*, 946 F.3d at 725 (stating that qualified individuals have a right to "meaningful access").

### 3. Plaintiffs Have Not Plausibly Alleged Causation

The ADA does not apply unless the relevant exclusion, denial, or discrimination is "by reason of [the plaintiff's] disability." 42 U.S.C. § 12132. The Rehabilitation Act does not apply unless the relevant exclusion, denial, or discrimination is "solely by reason of [the plaintiff's] disability." 29 U.S.C. § 794(a). Here, Plaintiffs cannot satisfy either standard.

First, they have not identified any provisions of the Election Code that discriminate against voters with disabilities. The only provisions that even consider disability provide accommodations *in favor of* voters with disabilities. *See supra* Part III.B.1.

Second, to the extent Plaintiffs do not vote in future elections, that result is not attributable to Secretary Hughs. In past elections—when Texas had the same laws and Plaintiffs had the same disabilities—Plaintiffs voted in person with the accommodations afforded by Texas law. *See* ECF 1 ¶¶ 39, 48, 56. The only difference now is that Plaintiffs do not want to leave their homes because of the pandemic, a situation that is not attributable to the State. "The real problem here is COVID-19, which all but the craziest conspiracy theorists would concede is not the result of any act or failure to act by the Government." *Coalition for Good Governance v. Raffensperger*, No. 1:20-cv-1677, 2020 WL 2509092, at *3 n.2 (N.D. Ga. May 14, 2020). Federal courts "cannot hold private citizens' decisions to stay home for their own safety against the State." *Thompson v. Dewine*, 959 F.3d 804, 810 (6th Cir. 2020) (per curiam).

Similarly, to the extent Plaintiffs decide not to vote by mail, their decisions are attributable to the pandemic and a desire not to accept assistance from anyone else. *See* ECF 1 ¶¶ 43, 52, 61. The

State cannot be held responsible for those decisions either.

#### 4. The Proposed Relief Would Fundamentally Alter Texas Elections

To obtain relief under the ADA and Rehabilitation Act, plaintiffs must show that their requested modification is reasonable. *See Block v. Tex. Bd. of Law Examiners*, 952 F.3d 613, 618 (5th Cir. 2020). A modification is not reasonable if the relief sought "effect[s] a fundamental alteration in the nature of the service." *Frame v. City of Arlington*, 657 F.3d 215, 232 (5th Cir. 2011).

Here, Plaintiffs ask this Court to fundamentally alter the Texas election system. The Texas Legislature made a deliberate choice when it crafted the Election Code. Rather than consolidating power in a central body, it entrusted the day-to-day operations of conducting and organizing elections to local entities and political parties. Plaintiffs would have this Court upend "the decentralized nature of the Texas election system" by ordering the Secretary to exceed her statutory limits and compel local election authorities to adopt, implement, and employ specific types of voting systems. *Lightbourn*, 118 F.3d at 428 n.7.

In their complaint, Plaintiffs demand a state-wide solution for their inability to vote by means of an electronic voting system. Specifically, they demand that the Secretary implement these systems across Texas, irrespective of the circumstances unique to each locality. As explained above, the Secretary does not have state-law authority to coerce local election officials into changing their policies. For Plaintiffs to obtain their requested relief, the Court would have to empower the Secretary to exceed her state-law limits. That would be, by definition, an impermissible fundamental alteration in voting by mail specifically and Texas elections generally.

### C. The Secretary Is Not Subject to the Rehabilitation Act

Plaintiffs' Rehabilitation Act claim fails for an additional reason. Plaintiffs have not plausibly "allege[d] that the specific program or activity with which [they are] involved receives or directly benefits from federal financial assistance." *Lightbourn*, 118 F.3d at 427 (explaining the requirements

15

for "a § 504 claim" under the Rehabilitation Act).

Plaintiffs' conclusory assertion that "[t]he Office of the Secretary of State receives federal financial assistance and thus is subject to Section 504," ECF 1 ¶ 119, does not address a "specific program or activity." On Plaintiffs' own theory, the "service, program, or activity" at issue is "[v]ote-by-mail voting." ECF 1 ¶ 125. But they do not allege that the Secretary receives federal financial assistance for voting by mail. The Fifth Circuit has "held that to state a § 504 claim a plaintiff must allege that the *specific* program or activity with which he or she was involved receives or directly benefits from federal financial assistance." *Lightbourn*, 118 F.3d at 427 (emphasis added).

Absent a plausible allegation that Texas's vote-by-mail program is supported by federal financial assistance, Plaintiffs' Rehabilitation Act claim fails as a matter of law.

## CONCLUSION

The Secretary respectfully requests that the Court dismiss Plaintiffs' Complaint for lack of jurisdiction or, in the alternative, failure to state a claim for which relief can be granted.

<div style="display: flex;">
<div>

August 25, 2020

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

</div>
<div>

Respectfully submitted.

PATRICK K. SWEETEN
Associate Deputy for Special Litigation

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER
Deputy Chief for Special Litigation

WILLIAM T. THOMPSON
Special Counsel

KATHLEEN T. HUNKER
Special Counsel

OFFICE OF THE ATTORNEY GENERAL
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-1414
Fax: (512) 936-0545
patrick.sweeten@oag.texas.gov
todd.disher@oag.texas.gov
will.thompson@oag.texas.gov
kathleen.hunker@oag.texas.gov

**COUNSEL FOR TEXAS SECRETARY OF STATE**

</div>
</div>

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on August 25, 2020, and that all counsel of record were served by CM/ECF.

*/s/ Todd Lawrence Disher*
TODD LAWRENCE DISHER